# PENNSYLVANIA LUMBERMEN'S MUTUAL FIRE INSURANCE COMPANY *v.* MEYER.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 182.   Argued March 14, 15, 1905—Decided April 3, 1905.

In order that a Federal court may obtain jurisdiction over a foreign corporation, the corporation must, among other things, be doing business within the State.

To obtain such jurisdiction in New York, personal service of the summons upon, and a delivery to, the defendant must be made in the manner designated by § 432 of the Code of Civil Procedure of that State, and if the corporation has no property in the State and service cannot be made on the president, treasurer or secretary, and no person has been designated, such service can only be made on a director or person specified in subdivision 3 of that section, in case the cause of action arose within the State.

A fire insurance company which issues its policies upon property in another State, is engaged in its business in that State when its agents are there, under its authority, adjusting the losses covered by its policies.

Where an insurance company, after loss has occurred on property insured by it in another State, fails to make the payment, or to build or repair, as required by the policy involved in this action, it fails to comply with the terms of the contract, and out of that failure the cause of action arises in the State where the loss occurs.

In this case as the company was doing business in New York and the cause of action arose in New York, service under subdivision 3 of § 432 of the Code of Civil Procedure, on a director of the company residing in New York was sufficient to give the Circuit Court of the United States, in New York, jurisdiction of a Pennsylvania corporation.

MEYER, the plaintiff below, recovered judgment in the United States Circuit Court for the Western District of New York, against the corporation defendant, for five thousand and some odd dollars, upon policies of fire insurance issued by it upon certain buildings (and the machinery therein) in the city of Rochester, in the State of New York. The corporation sought to obtain a review of the judgment and to that end sued out a writ of error, and the case was brought before

the Court of Appeals for the Second Circuit, which has certified certain facts upon which it desires the opinion of this court. These facts are as follows:

The action was commenced in the Supreme Court of the State of New York by service of the summons on Samuel H. Beach, at the city of Rome, N. Y., a director of the company, who resided in that city, and on application of the company, appearing specially, the case was removed into the United States Circuit Court for the Western District of New York, because of diverse citizenship of the parties. By motion, on special appearance, to set aside the service, by plea, exception and assignment of error, the question as to whether jurisdiction of the company had been obtained by such service has been properly raised.

The defendant in error is, and at the time of the commencement of this action was, a citizen and resident of the State of New York. The plaintiff in error is a fire insurance corporation organized under the laws of the State of Pennsylvania, and its office is in Philadelphia. Written applications were duly made to it for the issuance of the policies in suit, and were mailed from Rochester, N. Y., to the company at Philadelphia, Pennsylvania. The policies were made out and executed by it at Philadelphia and were sent to the insured at Rochester, N. Y., where he received the same. All transactions between the company and said insured, subsequent to the issuance of said policies and until after the destruction of said property by fire, were by correspondence, in writing, from Philadelphia to him at Rochester, and he writing from Rochester to it in Philadelphia.

Three of the said company's thirteen directors reside in the State of New York, but the only act done by them for it is to attend from time to time the meetings of the board of directors, which are held in the city of Philadelphia, and there to give such advice and take such action in connection with its business as may seem to them proper. They perform no duties and do no acts for the company in the State of New York and never

have. The company has no agents or officers within that State and has not had at any time. It has no office within that State, has never been authorized or licensed by the insurance department thereof to do business therein, and has not taken the steps required by law for that purpose. At the date of the service of the summons, as aforesaid, the said company had and now has about nine hundred thousand dollars ($900,000) outstanding insurance on property within the State of New York, which is something less than one-third of its total risks. The applications therefor were made by mail, addressed to it at Philadelphia, and the policies were executed and issued at that city and sent by mail from there to the insured within the State of New York.

Ever since the plaintiff in error was incorporated it has been engaged in the business of insuring property located in the State of New York and other States against loss by fire; and has sent by mail circulars from Philadelphia into said State soliciting business. In the prosecution of its business and for the purpose of increasing it the company sends its general manager to the different conventions of lumbermen held in the State of New York, for the purpose of urging upon those attending upon such conventions the advantages of insuring with it. It sends its adjusters into the State of New York when a loss by fire occurs there to property insured by it, for the purpose of adjusting the amount of such loss. It originally placed insurance upon the property covered by the policies in question after its manager had pointed out the advantage of insuring in the company, the conversation being had at the city of Rochester, in that State.

*Mr. Frank P. Prichard* for plaintiff in error:

The corporation was not carrying on business.

In order to give a Federal court jurisdiction in a suit against a corporation foreign to the State within whose borders the suit is brought the corporation must be carrying on business within the State, and be properly brought into court by service

upon an officer or agent who can fairly be said to be its representative agent within the State.

Both conditions must be shown. *St Clair* v. *Cox*, 106 U. S. 350; *Conn. Mut. Life Ins. Co.* v. *Spratley*, 172 U. S. 602.

The corporation in this case was not doing business in New York. Issuing a policy is not doing business. *Allgeyer* v. *Louisiana*, 165 U. S. 578. A citizen within a State may make a contract without the State. *United States* v. *Am. Bell Telephone Co.*, 29 Fed. Rep. 17; *Marine Ins. Co.* v. *Railway Co.*, 41 Fed. Rep. 643; *Sullivan* v. *Sheehan*, 89 Fed. Rep. 247. For New York decisions as to what is doing business within the State see *Hyde* v. *Goodnow*, 3 Comstock, 266; *Huntley* v. *Merrill*, 32 Barbour, 626; *Cummer Lumber Co.* v. *Insurance Co.*, 67 App. Div. N. Y. 151; *S. C.*, 173 N. Y. 633. And see also *Seamans* v. *Knapp Stout Co.*, 89 Wisconsin, 171; *Insurance Company* v. *Huron &c. Co.*, 31 Michigan, 346; *New Orleans* v. *Rhenish Lloyds*, 31 La. Ann. 781; *State* v. *Williams*, 46 La. Ann. 922; *People* v. *Gilbert*, 44 Hun, 522; *French* v. *People*, 6 Col. App. 311; *Carpenter* v. *Westinghouse Air Brake Co.*, 32 Fed. Rep. 434; *Conley* v. *Mathieson Alkali Co.*, 190 U. S. 406.

Even if doing business in New York there was no proper service. N. Y. Code Civil Pro. §§ 432, 1780. There was no designated agent of the company in New York. The cause of action did not arise in New York, and the resident director upon whom service was made had no duties and performed no acts for the corporation. *Pope* v. *Terre Haute Car Co.*, 87 N. Y. 137; *Schmidlaff* v. *La Confiance Ins. Co.*, 71 Georgia, 246; Clark & Marshall on Corp. § 690; *Goldey* v. *Morning News Co.*, 156 U. S. 518; *Conley* v. *Mathieson Alkali Co.*, 190 U. S. 406.

Service upon a person not the representative of the company in the State is not due process of law, and is so " contrary to natural justice and to the principles of international law " that a Federal court is not bound either to take or to recognize jurisdiction of such a suit against the corporation; and further, that even if the court could hold that a corporation could

waive in advance its right to due service of the writ in a suit against it, such waiver ought never to be implied. *St. Clair v. Cox,* 106 U. S. 350; *Barrow S. S. Co. v. Kane,* 170 U. S. 100. For limitations in this respect upon the power of the.States see *Cable v. U. S. Life Ins. Co.,* 191 U. S. 288; *Barron v. Burnside,* 121 U. S. 186; *Frawley v. Casualty Co.,* 124 Fed. Rep. 259.

*Mr. Heman W. Morris* for defendant in error:

The cause of action arose in New York. The money was to be paid in New York where the creditor resided. *Sanderson v. Bower,* 14 East. Rep. 517; *Hale v. Patton,* 60 N. Y. 233; *Dockham v. Smith,* 113 Massachusetts, 330; Wood on Fire Ins., 2d ed., 322; *Lafayette Ins. Co. v. French,* 18 How. 404; *Paul v. Virginia,* 75 U. S. 168; *Childs v. Harris Mfg. Co.,* 104 N. Y. 477; *Ithaca Fire Dept. v. Beecher,* 99 N. Y. 429; *Greiser v. Mass. Ben. Assn.,* 39 N. Y. St. R. 1; *Fidelity &c. Assn. v. Fieklin,* 21 Atl. Rep. 680; *Burckle v. Eckart,* 3 N. Y. 132.

As to whether service of process issued by a state court will be deemed sufficient under the laws of that State, the decisions of the highest courts of the State on that point will be regarded as controlling upon the Federal courts. *Ex parte Schollenberger,* 96 U. S. 369; *N. W. Mut. Ins. Co. v. Woodworth,* 111 U. S. 146; *Amy v. Watertown,* 130 U. S. 301.

The plaintiff in error was doing business in the State of New York at the time the cause of action accrued, and also at the time the action was commenced. Section 1780, Code Civ. Pro.; *Conn. Mut. Ins. Co. v. Spratley,* 172 U. S. 602; *Railroad Co. v. Koontz,* 104 U. S. 10. As to what are the duties of an appraiser see *Mayor v. Hamilton Ins. Co.,* 39 N. Y. 45. To enable a foreign corporation to carry on business it is not necessary to have local agents. *B. & L. Association v. Denson,* 189 U. S. 408; *New Haven &c. Co. v. Downington Mfg. Co.,* 130 Fed. Rep. 605; *Firemen's Ins. Co. Case,* 155 Illinois, 204; *Barrow S. S. Co. v. Kane,* 170 U. S. 100.

The essential conditions having been shown to exist, the state court obtained jurisdiction of the plaintiff in error by

service of process on one of its directors within the State. *St. Clair* v. *Cox*, 106 U. S. 353; Code Civ. Pro. N. Y. §§ 431, 432; *Hiller* v. *Railroad Co.*, 70 N. Y. 223; *Childs* v. *Harris Mfg. Co.*, 104 N. Y. 477; *Insurance Co.* v. *Woodworth*, 111 U. S. 146; *Amy.* v. *Watertown*, 130 U. S. 301.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

Upon the facts thus certified the Circuit Court of Appeals asks the question: "Had the Circuit Court jurisdiction of the plaintiff in error?"

In addition to the facts contained in the foregoing certificate the counsel for the respective parties stipulated upon the argument in this case before this court that a copy of one of the policies on which suit was brought in this case was correctly set out in the printed record in the Circuit Court of Appeals, and that this court might consider and decide the case with the same effect as if in the statement of facts accompanying the question certified by the Circuit Court of Appeals that court had found and certified the additional fact that the record in the Circuit Court of Appeals contained a true copy of one of the policies, and that the others sued upon were in the same form and language as the one set out in that record.

The policies in suit were issued upon a two-story frame sawmill building, and additions, and also upon engines and boilers and other machinery placed in that building, situated on Monroe avenue in the city of Rochester, State of New York. The policies provide that the company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and that such loss or damage is to be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; the assessment or estimate is to be made by the in-

sured and the company; if they differ as to the amount of loss, the same is to be ascertained by two competent and disinterested appraisers, the insured and the company each selecting one, and the two so chosen are to select a competent and disinterested umpire; the appraisers together are to estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, they are to submit their differences to the umpire; and the award in writing of any two shall determine the amount of the loss.   After the amount of the loss or damage has been thus determined, the sum for which the company is liable is payable in sixty days.   It is optional with the company to repair, rebuild or replace the property lost or damaged, with other of like kind and quality, within a reasonable time as provided for in the policy.

In order that a Federal court may obtain jurisdiction over a foreign corporation the corporation must, among other things, be doing business within the State.   *St. Clair* v. *Cox,* 106 U. S. 350; *Goldey* v. *Morning News,* 156 U. S. 518; *Barrow Steamship Company* v. *Kane,* 170 U. S. 100; *Connecticut Mutual Life Insurance Company* v. *Spratley,* 172 U. S. 602.

To obtain jurisdiction of a foreign corporation under the Code of New York, personal service of the summons upon and a delivery to the defendant must be made in the manner designated by section 432 of the Code of Civil Procedure of that State.   Subdivision (1) of that section provides for the service of the summons on and its delivery to the president, treasurer or secretary; subdivision (2) provides for like service upon and delivery to a person designated for the purpose by the corporation.   The service was made in this case under subdivision (3) of that section, which reads as follows:

3. "If such a designation is not in force, or if neither the person designated nor an officer specified in subdivision first of this section can be found with due diligence, and the corporation has property within the State, or the cause of action arose therein; to the cashier, a director, or a managing agent of the corporation, within the State."

It does not appear that the company had any property within the State, and therefore in order to come within subdivision (3) of the section the cause of action must have arisen therein and the summons must have been served within the State upon one of the officers named in that subdivision, viz., the cashier, a director or a managing agent of the corporation.

(1) Was the company doing business in New York State? Nearly one-third of the amount of its total fire risks was in that State when these policies were issued and when the loss occurred. If it be conceded that the contract was made in Philadelphia, it does not follow that all its business was therefore done in the State of Pennsylvania. The contract was an insurance policy issued upon real estate and machinery in a building situated in the city of Rochester, in New York. The contract was to pay the amount of loss, which might be sustained by fire, as specified in the policy. The policy provides for the manner of determining the amount of this loss, either by agreement between the company and the owner, or, in case of disagreement, then by the appraisers as already stated. The provisions of the contract clearly contemplate the presence of an agent of the company at the place of the loss after it has occurred, for the purpose of determining its extent and adjusting, if possible, the amount payable by the company to the owner. If no such adjustment can be made the policy provides in terms for the appointment of appraisers, one by the company and one by the owner, and that they disagreeing, an umpire shall be appointed, and the agreement of any two shall be binding. After that, the loss is payable to the owner by the company within sixty days. As the policy insures against loss, it of course contemplates that such loss may occur; and it also contemplates that the company shall send to the place where the loss occurred, that is, to New York, its agent, for the purpose stated. When, under the terms of the contract, the company sends its agent into the State where the property was insured and where the loss

occurred, for the purpose of adjustment, it would seem plain that it was then doing the business contemplated by its contract, within the State. A fire insurance company which issues its policies upon real estate and personal property situated in another State is as much engaged in its business when its agents are there under its authority adjusting the losses covered by its policies as it is when engaged in making contracts to take such risks. If not doing business, in such case, what is it doing? It is doing the act provided for in its contract, at the very place where, in case a loss occurred, the company contemplated the act should be done; and it does it in furtherance of the contract and in order to carry out its provisions, and it could not properly be carried out without this act being done; and the contract itself is the very kind of contract which constituted the legal business of the company, and for the purpose of doing which it was incorporated. This is not a sporadic case, nor the contracts in suit the only ones of their kind issued upon property within the State of New York. Many contracts of the nature of the one in suit were entered into by the company covering property within the State. We think it would be somewhat difficult for the defendant to describe what it was doing in New York, if it was not doing business therein, when sending its agents into that State to perform the various acts of adjustment provided for by its contracts and made necessary to carry them out.

We have no difficulty in concluding that the defendant was doing business in the State of New York during all the time of the existence of these policies.

(2) Did the cause of action arise within that State? Although the contract may have been a Pennsylvania contract, yet it does not follow that all its provisions were to be carried out in that State. The policy of insurance was, as we have said, upon real estate within the State of New York, and upon machinery contained in the buildings insured. After the defendant and the owner had either agreed upon the amount of loss, or the same had been estimated and determined upon by

the appraisers, as provided for in the policy, the defendant, by the terms of that instrument, promised to pay to the owner the amount thus arrived at, within sixty days. The policy does not state in so many words where such payment is to be made, but it is a general rule that, in the absence of any such provision, or of any language from which a different inference may be inferred, the right of the creditor to demand payment at his own domicile exists, and it is the duty of the debtor to pay his debt to the creditor in that way. It is stated in the opinion of this court, by Mr. Justice Field, in *State Tax on Foreign-held Bonds*, 15 Wall. 300, 320: "All the property there can be in the nature of things in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations from numerous adjudications, but no number of authorities, and no forms of expression could add anything to its obvious truth, which is recognized upon its simple statement." It is stated in 2 Parsons on Contracts, 8th edition, 702, as follows: "All debts are payable everywhere, unless there be some special limitation or provision in respect to the payments; the rule being that debts as such have no "*locus* or *situs*, but accompany the creditor everywhere, and authorize a demand upon the debtor everywhere." See also *Chicago, Rock Island &c. Railway* v. *Sturm*, 174 U. S. 710. In *Hale* v. *Patton*, 60 N. Y. 233, 236, Andrews, J., in delivering the opinion of the court, said: "In general a debtor, who is indebted on a money obligation, is bound, if no place of payment is specified in the contract, to seek the creditor and make payment to him personally. But this rule is subject to the exception that if the creditor is out of the State when payment is to be made, the debtor is not obliged to follow him, but readiness to pay within the State in that case will be as effectual as actual payment to save a forfeiture. (Co. Litt. 304, 2; *Smith* v. *Smith*, 25 Wend. 405; *Allshouse* v. *Ramsey*, 6 Whart.

331; *Southworth* v. *Smith*, 7 Cush. 391; *Tasker* v. *Bartlett*, 5 Cush. 359.)" And the same views in *Dockham* v. *Smith*, 113 Massachusetts, 320. The exception as to the creditor being out of the State, spoken of by Judge Andrews, refers to the subsequent absence of the creditor from the State, which was his domicile when the contract was there made.

In some other of the cases above cited, it is said the debtor need not follow the creditor out of the State where the contract was made in order to pay or make tender of payment of the debt. That depends upon the contract and what inference of the place of payment may be drawn from its contents when it does not state in so many words where payment is to be made. Where the debtor is a fire insurance company and makes such a contract as the policies in suit, and it is engaged in doing business by insuring property outside the State of its creation, and makes provision such as is made in this case for payment or for rebuilding or repairing, we think the place of payment in contemplation of the parties, and to be inferred from the facts set forth, is at the domicile of the creditor in the State where the property insured was situated.

Instead of making payment for the loss sustained by fire, the defendant had the option of repairing or rebuilding. If it availed itself of that right, of course it would have to rebuild at the place where the loss occurred. So far as appears from the statement of facts, the defendant has failed to make payment, and has also failed to avail itself of its option to rebuild. The payment, we think, was to be made at the same place where the rebuilding was to be done, in case the defendant availed itself of its right to rebuild, that is, within the State of New York, where the loss occurred. Failing to make payment, or failing to build or repair, it failed to comply with the terms of its contract, and out of that failure the cause of action arose in the State of New York.

(3) We think the service of the summons within the State of New York upon a director residing in that State was, under the facts of this case, a good service. As is seen, the company

was doing business within the State and the cause of action arose therein, and in such a case service upon a director residing in the State was sufficient. There is nothing in the/cases of *Conley* v. *Mathieson Alkali Works*, 190 U. S. 406, and *Geer* v. *Mathieson Alkali Works*, 190 U. S. 428, to the contrary. The first of the above cited cases seems rather to assume that if the company were doing business in the State, the service on a resident director would have been good. Although it is stated in the case at bar that the duties of a director of this defendant were to be performed at Philadelphia, where the board of directors met, yet that fact is not material in this case. A foreign fire insurance corporation doing business within another State, and voluntarily electing a part of its directors from among those who are residents of such State, may be said from that very fact to add to the confidence of possible insurers with the company in that State, and in that way to secure more business therein than would otherwise be the case. Although doing no particular act in the State for this company, such directors are, nevertheless, members of and policyholders therein, and are a part of the governing body of the company, and are by their position so far representative thereof as, in our judgment, to render service of process upon them in the State of their residence, when the company is doing business therein, a good service upon the company itself. Service upon them it may be assumed would certainly result in notice to the company itself, which is at least one of the reasons for holding a service on an agent good.

It would be most unwise to hold, upon the facts herein stated, that a person who suffered loss under a policy of insurance could only obtain redress, when refused by the company, in the courts of the State where the company was incorporated. It is not unreasonable for the State, under such facts, to endeavor to secure to its citizens a remedy in the domestic forum upon this very important class of contracts. *Lafayette Insurance Co.* v. *French*, 18 How. 404, 407. And we have no doubt that if it were generally understood by

policyholders in .States other than the State where the company was created that resort for the enforcement of their rights must in all cases be had to the courts of the State of the creation of the company, even though the company did business in such other States, the number of policyholders in the other·States would seriously fall off.

The service of the summons was, in our judgment, a good service on the company, and we therefore answer the question of the Circuit Court of Appeals. in the affirmative; and it is

*So ordered.*

MR. JUSTICE HARLAN took no part in the decision of this case.