**LIZRODT v. MILLER, Alien Property Custodian, etc.**

(Circuit Court of Appeals, Second Circuit. February 21, 1927.)

No. 166.

War ⟨⟩12—Difference in value of mark when Custodian seized German subject's debit balance and time payment might have been made held not recoverable (Trading with the Enemy Act, §§ 7 [e], 9 [Comp. St. §§ 3115½d, 3115½e]).

Where Alien Property Custodian seized debit balance of German subject deposited, pursuant to agreement with United States citizen doing business with him, for repayment in Hamburg on demand for drafts in marks, the United States citizen is not entitled, in suit under Trading with the Enemy Act, § 9 (Comp. St. § 3115½e), to recover the difference in exchange value in mark between time of seizure and time that payment might have first lawfully been made in Hamburg under agreement, since, under section 7 (e), being Comp. St. § 3115½d, Custodian was not limited to letter of contract.

In Error to the District Court of the United States for the Southern District of New York.

Action by William L. Lizrodt against Thomas W. Miller, as Alien Property Custodian, etc. Decree of dismissal, and plaintiff appeals. Affirmed.

Appeal from a decree of the District Court for the Southern District of New York dismissing a petition against the Alien Property Custodian, under section 9 of the Trading with the Enemy Act (Comp. St. § 3115½e).

The petition alleged as follows: The plaintiff, a citizen of New York, had for many years before April 6, 1917, done business with one Donner, a subject of Germany, residing in the city of Hamburg, purchasing of him drafts in marks, and repaying him in marks on his demand in Hamburg. It was agreed that the plaintiff should keep an open credit of 500,000 marks, which should be used against his purchases, and that he should pay any debit balance upon reasonable notice, in marks and in the city of Hamburg. On April 6, 1917, there was a balance against the plaintiff, after allowing certain set-offs, of about 250,000 marks, which the Custodian seized on February 15, 1918. After adjusting the set-offs, the Custodian demanded payment of the marks found due at an assumed exchange rate of 18 cents. The exchange in marks in July 1919, when first the plaintiff could lawfully have paid Donner, was 8 cents. The petition prayed judgment for the difference between the value of the marks at 18 and at 8 cents.

The District Court granted a motion of the defendant to dismiss the petition upon its face, and the plaintiff appealed.

Hays, St. John & Buckley, of New York City (Arthur Garfield Hays and John Schulman, both of New York City, of counsel), for appellant.

Emory R. Buckner, U. S. Atty., of New York City (Dean Hill Stanley and Eugene V. Bulleit, Sp. Asst. Attys. Gen., of counsel), for appellee.

Before HOUGH, HAND, and MACK, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). We shall assume arguendo that the stipulation in the contract between Lizrodt and Donner that Lizrodt should pay in marks and in Hamburg was not solely for Donner's benefit, but that Lizrodt might also have insisted upon it. If so, had Donner in New York demanded dollars, or for that matter marks, Lizrodt could lawfully have refused payment. The plaintiff agrees that the Alien Property Custodian was substituted in Donner's place by the seizure, but insists that his rights were not thereby enlarged. While, therefore, the Custodian by his demand matured the debt, he could not exact dollars from Lizrodt in New York. On the contrary, Lizrodt was entitled to wait until the first moment when he could lawfully pay marks in Hamburg, at which time they had fallen to 8 cents. The Custodian's exaction of payment in another currency and at another place was therefore unlawful.

We might find difficulties in the Custodian's position, if he was limited to the very letter of Lizrodt's obligation, but we think because of the statute that he was not. Section 7 (e) of the Trading with the Enemy Act (Comp. St. § 3115½d) provides that on the President's order a citizen must pay any money "owing" to an enemy. The purpose of the act was to reduce to possession all accessible enemy property, not only to cripple Germany, but to prosecute the war. Debts owed Germans would prima facie be payable in Germany. That this is true in the case of contracts made there, is we think universally admitted. In the case of those made here, the federal rule (Pennsylvania, etc., Ins. Co. v. Meyer, 197 U. S. 407, 25 S. Ct. 483, 49 L. Ed. 810) seems to differ from the usual law (Hale v. Patton, 60 N. Y. 236, 19 Am. Rep. 168; Weyand v. Park Terrace Co., 202 N. Y. 231, 95 N. E. 723, 36 L. R. A. [N. S.] 308, Ann. Cas. 1912D, 1010). The question necessarily depends upon the particular intent disclosed in the contract, and the

rules are at most only presumptions. Therefore, if the rule in Penn., etc., Co. v. Meyer, supra, applies, no debts could have been collected; if the New York rule applies, only those could be collected in which the contracts were made here, and then only in case an intent was not otherwise expressed that they should be paid at the residence of the German creditor. Such an interpretation of the section would certainly have prevented the collection of a great part, perhaps the greater part, of the debts covered by its terms, and would have made crucial the quite irrelevant question of where the contract chanced to be made. We cannot believe that anything of the sort was intended. The Custodian could have done no more than impound such debts until the end of the war, a time when their collection had become wholly useless for all purposes, except confiscation, to which the United States is not yet committed.

We recognize that the Custodian could not mature debts at his will; that would be a substantial increase in their burden. Indeed, it may be true that there are possible circumstances which would make a change in currency and place of payment an increased burden. Nothing of the sort was here alleged, and we are entitled to assume that Lizrodt's case was the usual one. An American called upon to pay marks in Germany must ordinarily first buy them with dollars. Even if he is entitled to stand upon the letter of his promise as against the promisee, it is no hardship upon him to demand the dollars before he has converted them, and it was in our judgment quite within the powers of Congress in the exercise of its war power so far to change the form of his obligation.

Indeed, Lizrodt must assert that he has an interest in the interdiction upon his payment during the war, and in the consequent vagaries of the rate of exchange. That interdiction depended upon purposes which did not in the least comprehend him or his fate. It is true that he would in this instance have profited by its accident, but that possibility was not a right, and he may not complain that he lost it, whether in the end Donner will profit, or the United States.

The case does not involve the question so much discussed at the bar; that is, at what time the rate of exchange must be taken in case of the breach of a contract to pay money. The point in dispute is whether there was a breach at all. Die Deutsche Bank Filiale v. Humphrey, 47 S. Ct. 166; 71 L. Ed. ——, November 23, 1926, has nothing to do with that.

Decree affirmed.