### CONE v. NEW BRITAIN MACH. CO.

Circuit Court of Appeals, Sixth Circuit. July 5, 1927.

No. 4615.

**I. Corporations ⊶642(1)—Connecticut machine corporation, employing mechanic in Ohio to visit plants of customers and adjust machines periodically, held "doing business" in Ohio.**

Where Connecticut machine corporation employed expert resident mechanic in Ohio to visit plants of its customers from time to time and adjust machines, so that they might operate at their maximum efficiency, which adjust-

ment was made regardless of whether machines were paid for, or whether they had been purchased secondhand from others than manufacturer, *held*, corporation was "doing business" in Ohio and amenable to service of process therein.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

**2. Corporations ⊶642(4½)—Mere solicitation of business in state through agents not permitted to conclude bargains is not "doing business" therein.**

The mere solicitation of business through agents sent into the state, who are not permitted to conclude bargains, is not "doing business," in the sense that the employer is within the state.

Denison, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

Action by Emma Cone against the New Britain Machine Company. Judgment for defendant, and plaintiff appeals, the appeal being treated as a proceeding in error. Judgment reversed.

James G. Stewart and Hugh L. Nichols (of Nichols, Morrill, Stewart & Ginter), both of Cincinnati, Ohio (Loren Gatch, McLaughlin & Gatch, of Cincinnati, Ohio, on the brief), for appellant.

Murray Seasongood (of Paxton, Warrington & Seasongood), of Cincinnati, Ohio (Robert P. Goldman, of Cincinnati, Ohio), and Kirkham, Cooper, Hungerford & Camp, of New Britain, Conn., on the brief), for appellee.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. This case was brought up on appeal, but under the Act of February 13, 1925 (43 Stat. 936), is to be treated as a proceeding in error. The record is appropriate to a revision at law, and we assume that a writ of error is the appropriate remedy. The case involves the sufficiency of the service of a summons, the return thereon being quashed on the ground that the defendant was not engaged in such business in the state as made it amenable to the service of process therein.

The defendant is a Connecticut corporation, with its factory and executive offices in New Britain, Conn.; it has no office or factory or repair shop located in Ohio. It manufactures and sells machines at New Britain, shipping them f. o. b. cars at that point to points in Ohio and other states. Its em-

ployee, who was served with the summons, resides in Ohio and is its sales representative in that state. His sole duty is to solicit orders for machines and show the purchasers thereof how to use them; he does not make or conclude contracts, or collect payments on or adjust disputes as to contract prices. His business card states that he is the "representative in Ohio of the New Britain Machine Company." The company also employs an expert mechanic, who resides in Columbus, Ohio, and whose duty it is to visit the plants of Ohio customers from time to time and adjust the machines, so that they may be operated at their maximum efficiency. He is known as a demonstrator, but is in fact a service man, and he has no authority to do anything, except adjust machines after they have been installed and demonstrated and make minor repairs incident to adjustments, for which he is paid by the machine company. [1] The question is whether the work this demonstrator performs is doing business in the state by the defendant for the purpose of service of process. The lower court thought that it was not, and this position is urged upon us on the authority, among others, of Green v. C. B. & Q. Ry. Co., 205 U. S. 530, 27 S. Ct. 595, 51 L. Ed. 916, and Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U. S. 516, 43 S. Ct. 170, 67 L. Ed. 372. In the first of these cases it was held that a railway company which had no tracks within the district where the suit was brought, but which, as an incident to its freight and passenger business outside the district, employed "district freight and passenger agent," and hired an office in the district to be used in soliciting freight and passenger traffic, was not doing such business in the district as rendered it subject to service of process therein. The other involved the service of a summons on the president of a foreign corporation while he was temporarily within the jurisdiction of the court making purchases of merchandise, and it was held that he was not amenable to the service.

Plaintiff relies upon Fire Insurance Co. v. Meyer, 197 U. S. 407, 25 S. Ct. 483, 49 L. Ed. 810, and Browning v. Waycross, 233 U. S. 16, 34 S. Ct. 578, 58 L. Ed. 828. In the Meyer Case the defendant, an insurance company, was domiciled in Pennsylvania. Suit was filed against it in New York. It had no agent or office within the state of New York and had not been licensed by the insurance department of that state. At the time of the service of summons it had a large amount of outstanding insurance on property within the state, "something less than one-third of its total risk." It had engaged in the business of insuring property in that state from its organization, soliciting the business from Philadelphia, and when losses occurred sending its adjusters into the state to adjust them. It was decided that, as the policy that the company regularly issued clearly contemplated the presence of one of its agents in the state at the place of loss after it had occurred, to determine the extent of liability and, if possible, to adjust the loss, the company was doing business in the state. The Waycross Case involved an occupation tax placed by the municipality upon "lightning rod agents or dealers engaged in putting up or erecting lightning rods within the corporate limits" of the city of Waycross, and it was held that the erecting of the rods, which the seller's agent did under the contract of sale, "without further charge," was not so associated with the interstate commerce, through which the rods were brought into the state, as to be a part thereof, but that it concerned itself in its dominant characteristics with the doing of a local act, after the interstate commerce had terminated, and was therefore subject to the municipal tax.

[2] It is settled that the mere solicitation of business through agents sent into the state, who are not permitted to conclude bargains, is not doing business in the state in the sense that the employer is within it. This was the ruling in the Green Case and in People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537. On the other hand, in the International Harvester Co. Case, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479, it was held that there was a "doing of business" when, in addition to the solicitation, authority was given the agents of the Harvester Company to receive payments in money, checks, or drafts, and to take notes payable at banks in the state. These latter cases, however, deal with facts quite different from those under consideration. Neither they nor the other cases cited are in point. Each of them was and necessarily must have been decided upon its own facts. Browning v. Waycross, already referred to, and York Manufacturing Co. v. Colley, 247 U. S. 21, 38 S. Ct. 430, 62 L. Ed. 963, 11 A. L. R. 611, are more nearly representative in decision of the opposing views of the case at bar than any other case to which our attention has been called.

In the York Manufacturing Co. Case the contract was for an ice machine to be shipped into the state. It was to be installed "under the supervision of an engineer to be sent by

the York Manufacturing Company, for whose services a fixed per diem charge of $6 was to be paid by the purchasers, and who should have the assistance of mechanics furnished by the purchasers, the supervision to include not only the erection, but the submitting of the machinery to a practical test in operation before the obligation to finally receive it would arise." It appeared that "these provisions were carried out, that about three weeks were consumed in erecting the machinery and about a week in practically testing it, when after a demonstration of its successful operation it was accepted by the purchasers." After pointing out that in the Waycross Case the business of erecting the lightning rods bore "no relevant or appropriate relation to the contract" for the sale of the rods, and hence the former was subject to local control, the court said, with reference to the York Case: "The only possible question open, therefore, is—was the particular provision of the contract for the service of an engineer to assemble and erect the machinery in question at the point of destination, and to practically test its efficiency before complete delivery, relevant and appropriate to the interstate sale of the machinery?" This question was answered affirmatively; but as we construe the opinion it was considered significant, if not of controlling importance, that the seller was obliged to install and successfully operate the machinery before it was "accepted by the purchasers" or before "complete delivery."

If in the case at bar the question were restricted to such relation between the installation and the sale that the latter depended upon the correct and efficient doing of the former, the intrinsic value of the machinery depending largely upon its being united and operated as a whole, or if the company had done no more than furnish a man to supervise the installing of the machine and to give it a practical test "before the obligation finally to receive it would arise," the question would be less difficult and, indeed, would be within the reasoning, if not the express terms, of the York Case. Defendant's demonstrator, however, does not merely install, test, and demonstrate the machine. After all of that has been done by some one else, he visits the plant "with more or less frequency to service the machine, and to make any adjustment and do any work on the machine made necessary by any later trouble developing in the working of said machine." Thus it appears that defendant maintains an expert mechanic in Ohio, who periodically visits the plants where defendant's machines are used, and adjusts and repairs them so that they will render the maximum service of which they are capable—this whether they were sold by defendant to the plant, or whether they were acquired secondhand, and also regardless of when they were installed; that is, after they have been installed, successfully tested, demonstrated, and paid for. The difference between this course of conduct and that in the York Case is marked. What was done in that case was so inherently related to the contract of sale as to be dominated by it; there was in fact no final delivery of the machine and no completion of the sale until that service was performed. What defendant's demonstrator does is keep the machines in order after they have been installed, tested, demonstrated, and paid for, whether they were bought directly from his company or not, and regardless of the length of time they have been in use. This additional work, we think, is doing business within the state.

Judgment reversed.

DENISON, Circuit Judge. I agree that the conclusion of "doing business in the state" must rest solely on the habitual acts of the serviceman, Perry, the other matters relied upon by plaintiff being only a general solicitation of interstate business or a sporadic incident of readjusting an installation; but my view of the character of this serviceman's duty is such that I cannot concur in the opinion. The development of "service" in recent years along lines here involved is a matter of which we may, to some extent, take judicial notice. Any hesitation to do so is minimized by this record, which shows the practice to have been adopted by every one of the several manufacturers whose representatives testify. The substance of the practice is that makers of complex and delicate machinery, particularly if automatic or semiautomatic, furnish expert advice and assistance to purchasers in order to keep the machines running to the best advantage. This involves either periodic or on-demand visits to the machine users by expert mechanics, who advise the operators, locate trouble, adjust the mechanism, make trifling repairs or replacements, or arrange for more substantial ones to come from the factory. These services are rendered from time to time, after the sale and delivery are complete, and as well to users who have purchased at secondhand as to those who have bought directly from the factory. They may be expressly provided for in the contract of sale, or may be furnished without express contract as a matter of general policy, and they may

be for an extra·charge or may be gratuitous —in the sense that they may all be covered by the purchase price. They may be rendered by a man generally employed at the factory in another state and who goes out occasionally on a service job, or by a man who gives all his time to such service, working in the state where he happens to reside or in that and nearby states.

None of these variations can affect the character of this class of service, in the respect now at issue. A reasonably satisfactory system of service of this kind must be maintained at the peril of losing his business, by any manufacturer of such machinery who has competition. The maintenance of such a system and a good reputation therefor are a part of the manufacturer's stock in trade. The system builds up and maintains good will; it is a kind of advertising; and it becomes an advisable, if not a necessary, incident to an interstate business of manufacturing and selling such machines. Hence it results that large scale manufacturing corporations of this class, sending machinery into 30 or 40 different states, by transactions which are in each instance interstate sales, must and do give more or less of this service work in as many states.[1] If this is "doing business within the state," not only are they subject to service of process in that state, but likewise to taxation and to burdensome reporting duties, as well as to serious penalties if they do not see fit to accept various local burdens which cannot be imposed on interstate commerce. So far as counsel advise us, this particular conduct within the state by a foreign corporation has not before been held to justify these liabilities and burdens.[2]

Going to the decided cases in the Supreme Court: It has several times been said that each case depends on its own facts; and it is not easy, even if possible, to extract a common principle of decision which is clearly applicable to the present case. We may first observe that all those cases which deal directly with contract rights and with the making or performance of contracts for rights may be put into a class by themselves. Contracts for railroad transportation and contracts of insurance are the outstanding examples. There the question is whether any essential part in the making or in the performance of those contracts is regularly carried on within the state. Solicitation of the desired contracts is not carrying on such business, no matter how extensive the solicitation may be; but taking any essential steps in the making of the contract puts it into the other class. So, a mere sending of men into the state to get a final payment may not make the business intrastate; but the habitual sending of agents into the state, with authority to settle, compromise, and adjust claims, will give it this character, for that is the performance of its contracts. I think that all of the railroad and insurance cases are properly summarized in this way, and that they are thus so differentiated that they are not here very helpful. Insurance Co. v. Myer, 197 U. S. 407, 25 S. Ct. 483, 49 L. Ed. 810; Green v. Railway, 205 U. S. 530, 27 S. Ct. 595, 51 L. Ed. 916; Minnesota Commercial Men's Ass'n v. Benn, 261 U. S. 140, 43 S. Ct. 293, 67 L. Ed. 573; Philadelphia v. McKibbin, 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710; St. Louis S. W. R. Co. v. Alexander, 227 U. S. 218, 226, 33 S. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; General Investment Co. Case (C. C. A.) 250 F. 160, 164.

There remain cases where a foreign corporation is engaged in the interstate selling and transportation of physical articles. Here it is clear that the main and substantial business of the company is foreign, and that it is to be brought into the local class only by something sufficient to change its general and primary character. Familiar Supreme Court instances of cases of this kind are the Picture Frame, the Lightning Rod, the Ice Machine, the Harvester, and the Tobacco Cases.

In the Picture Frame Case (Dozier v. Alabama, 218 U. S. 124, 30 S. Ct. 649, 54 L. Ed. 965, 28 L. R. A. [N. S.] 264), the defendant was taking orders for the delivery of pictures shipped into Alabama from Chicago, set in frames which (probably) were assembled in Alabama. It was conceded that the traffic in pictures was interstate, but it was claimed that the frames, not being def-

---

[1] Defendant, New Britain Company, makes in Connecticut and sells throughout the United States a semiautomatic screw machine, intended to be operated at high efficiency by relatively unskilled workmen. They are sold f. o. b. New Britain. The Ohio buyer installs the machine in his shop. An expert demonstrator from the factory supervises the installation and gives the workmen general instructions for operation. The machine is usually sold for a specific job and on a production estimate. The installing demonstrator has to make it perform up to the estimate. After acceptance, when trouble develops, or when speeds, gears, and appliances must be adjusted for a different job, if the matter is beyond the operator's skill, Perry is sent for, or it is saved up until his next regular visit.

[2] Unless in State v. Robertson, 271 Mo. 475, 196 S. W. 1132, which seems difficult to reconcile with the York Case, supra; but see, to the contrary effect, Southeastern Co. v. Marmon (1924) 158 Ga. 150, 125 S. E. 121.

initely covered by the solicited order, and perhaps not being in place when shipped, were not sold until after their arrival in the state. The court declared the interstate character of the whole transaction, apparently regarding the sale of the frames as incidental to the main and clearly interstate transaction. To use the criterion of the York Case, the furnishing of the frames was "relevant and appropriate" to the interstate picture contract. It is said in our present case that the sale contracts did not contain any binding provisions to give this future "service," and that the interstate transaction ended when the title to the machinery passed; but Mr. Justice Holmes says (218 U. S. 128 [30 S. Ct. 650]): "What is commerce among the states is a question depending upon broader considerations than the existence of a technically binding contract, or the time and place where the title passed."

If the present case can rightly be classified with either the Lightning Rod or the Ice Machine Case, that will be the end of the trouble. It should be assumed that the two cases, reaching opposite results, may be reconciled by differences in the facts; but the controlling distinctions in the facts are not very obvious. Consider first the Lightning Rod Case (Browning v. Waycross, 233 U. S. 16, 34 S. Ct. 578, 58 L. Ed. 828). A good way to test an analogy is to transpose the facts of our case to the other one. If we might suppose that the lightning rods had been duly sold and duly erected, and that the manufacturing company did nothing in Georgia except to send around an agent once in six months, to see if the rods were in good order, and if there was complaint to advise the purchasers how to readjust the rods, so as to get the greatest efficiency, and make little readjustments himself—if we might suppose this, we would see, I think, that nothing which is said in the opinion would be appropriate to such a case. The Lightning Rod Case is to me a plain enough one, as are all cases of erection or installation by the vendor. The company was not selling lightning rods; it was selling *erected* lightning rods. The erection was a part of the manufacture or production of the thing which was sold, and was purely local. It was the same in principle as the erection of a more complicated machine or apparatus, in which cases it is clear that business is being done locally. General Ry. Signal Co. v. Virginia, 246 U. S. 500, 38 S. Ct. 360, 62 L. Ed. 854, is an instance.

The opposite result reached in the Ice Machine Case (York v. Colley, 247 U. S. 21, 38 S. Ct. 430, 62 L. Ed. 963, 11 A. L. R.

611) was dependent upon the proper characterization of that part of the contract which made it the nonresident vendor's duty to furnish a man to supervise the erection and test. The vendee was to do the erection and even pay for the supervision. The Waycross Case is discussed and distinguished. It is true that reference is made to the fact that, in the York Case, this supervision was to be furnished before the subject-matter was ready to be tendered for final acceptance, and this feature is referred to in the present majority opinion; but this cannot have been the feature which distinguished it from the Waycross Case, because in this respect there was no distinction. In each case equally the doing of the work or furnishing of the service by the vendor was to precede final delivery and acceptance on the ground. This feature tends to identify rather than to distinguish the two cases. Nor do I see how the fact that the vendee paid something (probably only a part) of the visiting superintendent's cost, is of any importance. Indeed, the tendency of that fact is in the wrong direction to be of aid to the result reached. Sending a man into a state to be hired by the local vendee might be said to indicate doing business in the state.

It seems to me that the true distinction between the two cases must be this: In the Waycross Case the things sold (erected lightning rods) had never been the subject of interstate transportation; the vendor shipped into the state raw materials; within the state they were manufactured into deliverable form; in the York Case, the sale and shipment were interstate transactions and the expert services were merely incidental to the main transaction. Chief Justice White does not say "incidental"; he says "relevant and appropriate to"; or, again, that the service within the state "was essentially connected with the subject-matter of the sale— that is, might be made to appropriately inhere in the duty of performance." This is to say that the erection of the lightning rod is a simple matter which is necessarily done locally and which can be done locally without any aid from the vendor. Hence, it cannot be "made to appropriately inhere in the duty of performance" of a contract of interstate sale and shipment. On the other hand, a contract to direct the assembling of complex machinery is as "appropriate and relevant" to its sale as a frame is to a picture. This direction cannot be done by local men, and the instruction might (nearly) as well be received by the vendee going to the vendor's factory, as given by the vendor coming to the vendee's shop; it is "immediately and in-

herently connected" with the interstate sale. Stated in other words, the teaching of the case seems to be that assistance, instruction, and advice in the assembling and operation of a complex machine, may rightly be made incidental to the purchase. If that is the principle, I fail to see how it can make any difference whether this advice is given before or after the delivery of the article sold. If there is an agreement or understanding that from time to time the vendee may ask and the vendor will give this kind of assistance, to give it "appropriately inheres in the duty of performance of the sale contract." [3]

Upon the whole, it seems to me that the giving of service of the character and to the extent here shown, should be treated as merely incidental to the defendant's general business of manufacturing and selling its automatic machinery in interstate commerce. In the language of Mr. Justice Holmes: "From the point of view of commerce the business was one affair." Davis v. Com. of Virginia, 236 U. S. 697, 35 S. Ct. 479, 59 L. Ed. 795.[4]

---

[3] It is suggestive to note that a witness for plaintiff, doing this "service" work for another manufacturer, considers that he is in the sales department.

[4] Reference should be had to Judge Cochran's exhaustive "adventure in interpretation" in Farmers' Bank v. Federal Bank (D. C.) 286 F. 566, for a review of many cases, and developing reasonableness as the criterion of local suability; also to Judge Learned Hand's conclusion (Hunau v. Northern Co. [D. C.] 262 F. 181) that "the theory upon which rests the right to sue a foreign corporation is in flux," and that "no consistent theory can at present reconcile all the cases."

Cone's suit was for a tort committed in Ohio, but the Ohio statutes, in regulating service of process, make no distinctions between actions arising in the state and others. This local origin seems immaterial, except, perhaps, as bearing on reasonableness as a test.

It should not be overlooked that, if the District Judge's conclusion as to doing business in the state is in substantial part an inference of fact, and is supported by any proof, we probably must accept it as final.