In the Matter, of the Estate of RAFFAELE VISCOMI, an Incompetent.

LEO T. CROWLEY, as Alien Property Custodian of the United . States, Petitioner; ONEIDA NATIONAL BANK AND TRUST COM-PANY OF UTICA, as Committee, Respondent.

County Court, Oneida County, November 4, 1944.

*Stephen L. Waszkiewicz* and *Irving J. Higbee* for petitioner.

*Salvador J. Capecelatro* for respondent.

HANAGAN, J. This is an application by the Alien Property Custodian of the United States for an order directing the Oneida National Bank & Trust Company, Utica, New York, committee of the person and property of Raffaele Viscomi, an incompetent person, to turn over and deliver to the said Alien Property Custodian all the funds and property in its hands as such committee, together with any interest or other increments thereon, less its lawful commissions and such legal disbursements as may be determined by this court in this proceeding.

Raffaele Viscomi, a citizen of the Kingdom of Italy, was for several years prior to November 1, 1939, a resident of the city of Rome, Oneida County, New York. He acquired an estate of the present value of $16,433. On or about November 1, 1939, the mental condition of said Viscomi became such as to necessitate his removal to the Marcy State Hospital, Marcy, Oneida County, New York. Proceedings were instituted in this court pursuant to the provisions of the Civil Practice Act whereby Viscomi was declared an incompetent person, and on November 1, 1939, the Oneida National Bank & Trust Company was duly appointed by order of this court the committee of the person and property of said Raffaele Viscomi. The said bank has continued as such committee of the person and property of Viscomi to this date. It has annually filed an inventory and account of all property of the incompetent as well as a report of the manner in which said estate has been administered. Viscomi, the incompetent, continued to be an inmate of Marcy State Hospital from November 1, 1939, until May 23, 1940. At that time the Department of Mental Hygiene of the State of New York completed arrangements with the Italian consular authorities for a trip to Italy by Viscomi, the incompetent, and for a temporary sojourn there with his brother, with a view that such a trip and sojourn might prove beneficial to the health of the said incompetent. On the 25th day of May, 1940, the Department of Mental Hygiene of the State of New York, through its agents, delivered the said incompetent to medical officers on board the S.S. *Conte di Savoia,* which sailed from the port of New York for Naples, Italy, May 25, 1940. The incompetent was met at Naples by his brother and shortly thereafter reached his native village in the province of Catanzaro, Italy. Shortly after the arrival of the said incompetent in Italy, the then Italian Government declared war upon France and the British Empire, and subsequently an effort was made by the representatives of the then Italian Government to reach and obtain custody and control of the property of said incompetent in the hands of the Oneida National Bank & Trust Company, his committee. It was unsuccessful in this effort. On or about December 8, 1941, the Government of the United States declared war on Italy, among other nations. The respondent committee states in its answer to the petition that it is informed and verily believes that said Raffaele Viscomi is alive and still residing within the province of Catanzaro, Italy.

After our government declared war upon Italy, and other nations, it set about to protect itself against hostile and destruc-

tive inroads by its enemies from within as well as from without its borders.

On May 7, 1943, acting pursuant to the authority contained in Executive Order No. 9095, as amended by Executive Order No. 9193 (eff. July 6, 1942, 7 Fed. Reg. 5205) and subdivision (b) of section 5 of the Trading with the Enemy Act, as amended (U. S. Code, tit. 50, Appendix, § 5, subd. [b]), the Alien Property Custodian of the United States issued Vesting Order No. 1439 in the matter of the estate of Raffaele Viscomi. This Vesting Order was duly published in the Federal Register of May 13, 1943 (8 Fed. Reg. 6195). Under the provisions of section 307 of title 44 of the United States Code " The publication in the Federal Register of any document shall create a rebuttable presumption (a) that it was duly issued, prescribed, or promulgated * * * ." The same section provides further, " The contents of the Federal Register shall be judicially noticed ".

By the terms of the Vesting Order above mentioned the Alien Property Custodian made the following findings:

" (1) The property and interests hereinafter described are property which is in the process of administration by The Oneida National Bank and Trust Company as Committee of the person and estate of Raffaele Viscomi, acting under the judicial supervision of the County Court of Oneida County, Utica, New York,

" (2) Such property and interests are payable or deliverable to, or claimed by, a national of a designated enemy country, Italy, namely,

| National: | Last Known Address |
| --- | --- |
| Raffaele Viscomi | Italy." |

and determined that —

" (3) If such national is a person not within a designated enemy country, the national interest of the United States requires that such person be treated as a national of a designated enemy country, Italy ".

After making such findings, the Alien Property Custodian, by the above mentioned Vesting Order, vested all the property and estate of Raffaele Viscomi of any nature whatsoever in the possession of the Oneida National Bank & Trust Company of Utica as committee of the person and estate of Raffaele Viscomi, an incompetent, in himself to be used, held, administered, liquidated, sold or otherwise dealt with in the interest of and for the benefit of the United States. On June 8, 1943, the Alien Property Custodian mailed certified copies of said Vesting Order to the Oneida National Bank & Trust Company, the com-

mittee, and to the clerk of this court, and addressed at the same time to said committee a written demand for the delivery of said vested interest, which demand was refused by the committee.

Section 10 of the above-mentioned Executive Order provides as follows: " For the purpose of this Executive Order any determination by the Alien Property Custodian that any property or interest of any foreign country or national thereof is the property or interest of a designated enemy country or national thereof shall be final and conclusive as to the power of the Alien Property Custodian to exercise any of the power or authority conferred upon me (the President) by section 5 (b) of the Trading with the Enemy Act, as amended." It is the purpose of the Trading with the Enemy Act, and the several related Executive Orders, not only to deprive an enemy " national " or enemy country of the use of funds or property, but also to reduce to possession all actionable enemy property. (*Litzrodt* v. *Miller*, 17 F. 2d 533.) Executive Order No. 9095, as amended, provides that the Alien Property Custodian is empowered to " vest " any property " in the process of administration by any person acting under judicial supervision ". The term " vest " is equivalent to " seize " and gives the Custodian " the right to immediate possession of the property for the benefit of the United States." (*Stern* v. *Newton*, 39 N. Y. S. 2d 593, 598.)

In this proceeding it has been found by the Alien Property Custodian that Raffaele Viscomi, the incompetent, is a national of a designated enemy country, namely Italy, and his last known address is Italy. The proof before the court on this application is that he is now residing in Italy. So, therefore, no further consideration need be given the finding numbered (3) of the Vesting Order.

It is the contention of the Alien Property Custodian that the United States being presently at war and Italy being a designated enemy country and Raffaele Viscomi, the incompetent, being a resident alien of such designated country and so at least technically an alien enemy residing in an enemy country, and it having so found pursuant to subdivision (b) of section 5 of the Trading with the Enemy Act, all of the property and estate belonging to said incompetent now in the process of administration by the committee appointed by the County Court of Oneida County has been vested in said Custodian and should be ordered turned over to him by this court after final accounting and proper allowances by the court.

It is the contention of the committee of said incompetent that even though the incompetent is now temporarily residing in Italy, an enemy country, the domicile and actual residence of said incompetent was and still remains in the county of Oneida, New York; and that he is not an enemy alien residing in an enemy country. There is presented for this court to determine the question of the actual residence and domicile of Raffaele Viscomi, the incompetent person.

The Trading with the Enemy Act and the decisions of the courts construing the same recognize that *residence* or doing business in a hostile territory is the test of an alien enemy for the purpose of trading. (*Stadtmuller* v. *Miller,* 11 F. 2d 732; *Waldes* v. *Basch,* 109 Misc 306, affd. 191 App. Div. 904; *Noble* v. *Great American Ins. Co.,* 200 App. Div. 773, affd. 235 N. Y. 589.)

In *Stadtmuller* v. *Miller* (*supra*) the court said, at page 738: " For like reasons we are satisfied that it would be most unreasonable to hold that Stadtmuller lost his ' residence ' or his ' domicile ' in the United States when he left the country for a brief visit to Europe for the purpose of recovering his health in 1917, and in entering Germany to see about the settlement of his parents' estate. And if he did not lose his American residence by that temporary entry into the country, he no more lost it when he was compelled against his will to remain there by the military regulations, which did not permit him to withdraw while war continued.

" In general, the civil rights of a person depend upon whether that person is a transient, a resident, an inhabitant with a domicile, or a subject, or a citizen. See Meares, Trading with the Enemy Act, p. 79. A transient is one who is temporarily within the jurisdiction by reason of business or pleasure. In our opinion, upon the allegations of this complaint, Stadtmuller entered Germany as a transient for a temporary purpose, and not with any view of becoming a resident, or establishing a domicile there, or engaging in business. It was a place of mere temporary sojourn, while he saw about the settlement of the estates of his deceased parents. A mere transient is not a resident. 24 Am. & Eng. Encyc. of Law, 698. The fact that, while there, he was prevented by military regulations from leaving the country, did not change his status from that of a ' transient ' to that of a ' resident.' ' "

In the above case the court dealt with the problem of residence which involved a competent person, whereas in the case at bar the court has before it an adjudged incompetent person.

Every person *sui juris* may choose his domicile and change it whenever and wherever he chooses. (*Matter of Balch*, 93 Misc. 419.) An infant for obvious reasons cannot choose its residence. (*Matter of Thorne*, 240 N. Y. 444.)

Raffaele Viscomi, an adjudged incompetent person, being incapable of intelligent action, has no power by his own will or act to change his State or national domicile from that which existed at the time he became incompetent since he lacks the mental capacity of exercising either choice or intention — twin elements generally regarded as essential to a change of domicile. (*Chew* v. *Nicholson*, 281 F. 400; *Matter of Curtis*, 199 N. Y. 36; *Matter of Horton*, 175 App. Div. 447; *Matter of Porter*, 34 App. Div. 147.) The committee of the incompetent has no power to change the domicile of its ward. (*Chew* v. *Nicholson, supra; Matter of Curtis, supra; Matter of Horton, supra; Matter of Porter, supra.*)

There is no evidence in this proceeding that the committee attempted to change the domicile of the incompetent.

A court having jurisdiction of the proceeding may authorize the committee to change the domicile of an incompetent. (*Matter of Robitaille*, 78 Misc. 108, 119; *Parsee Merchant's case*, 11 Abb. Prac. [N. S.] 209.) In the instant case no such authority to change the domicile of the incompetent has been given by the court. It must be concluded that the present actual residence and domicile of Raffaele Viscomi, the incompetent, is the city of Rome, Oneida County, New York. Therefore the Alien Property Custodian is without legal authority to find and determine that he is a resident national of Italy, a designated enemy country, and without authority to vest in himself as such Custodian all the property and estate of said incompetent now in the possession of the Oneida National Bank & Trust Company, the committee of said incompetent.

The relief sought under the petition of the Alien Property Custodian is denied without costs. Ordered accordingly.