O’NIELL, J.
This is an action to recover a license tax for the year 1916 on the business done by the defendant company through its branch office in the city of Shreveport. The ordinance levying the tax provides that each and every life and accident insurance company conducting a life or accident insurance business of any kind in the city of Shreveport shall pay a license tax on the gross amount of annual premiums on all risks located within the city, and on all risks located elsewhere, contracted for in the city of Shreveport or from its office in that city, for which a local license is not paid elsewhere. The license is graduated, in 59 classes, in the ordinance, according to the gross amount of the annual premiums. The amount of the premiums collected by the defendant’s branch office in the city of Shreveport, in the year 1915 (being the basis of the classification), on all risks located Within the city of Shreveport and contracted for in that city, amounted to $183,179.47. In addition to that business, the defendant’s branch office in Shreveport collected in that year, and transmitted to the home office in New York, premiums to the amount of $280,820.82 on insurance written by the agents of the defendant company outside of the city of Shreveport, and for which no local license tax was paid elsewhere. The defendant tendered to the city $1,080, the amount of the license tax based on premiums amounting to $180,000, and less than $190,-000. The city declined the tender, claiming that the amount should be $2,760, that is, based, on the total amount of premiums, $464,000.29 being in the class where the premiums are $460,000 or more, and less than $470,000. The contest, therefore, is as to whether the license tax should be based only upon the amount of premiums on the risks located in the city of Shreveport and contracted for in that city, or upon the total amount of premiums collected by the branch office in Shreveport, including the premiums collected on risks located elsewhere, for which a local license tax was not paid elsewhere. The district court rendered judgment in favor of the defendant company, fixing the amount of the license tax at $1,-080; and the plaintiff has appealed.
The case was submitted on a statement of facts acknowledged by the plaintiff and defendant. The defendant- maintains a branch office in the city of - Shreveport, for the convenience of its agents and policy holders in North Louisiana. The premiums collected by the agents of the company in North Louisiana, outside of the city of Shreveport, are remitted to the branch office in Shreveport. The same is true of the premiums collected by the agents of the company on insurance written in Shreveport. The policy holders residing in North Louisiana, in as well as outside of Shreveport, make remittances of the annual premiums to the branch office in Shreveport. All premiums received by the *363 branch office in Shreveport are remitted from that office to the home office’ in New York City. The branch office in Shreveport is in charge of an agency director, who has supervision over all agents and solicitors of the defendant company in North Louisiana. There is also a cashier, and there are bookkeepers, clerks, and stenographers in the branch office in Shreveport, all salaried employes of the defendant company. All applications for insurance received by the agents or solicitors of the defendant company in North Louisiana are sent, with the report of the medical examination, by the agents or solicitors to the branch office in Shreveport, whence they are forwarded to the home office in New York. If the application is accepted by the defendant company, the policy is written in the New York office and sent to the branch office in Shreveport, whence it is sent to the agent or solicitor from whom the application was received; and the latter delivers the policy to the insured and receives from him the first premium, and forwards the same to the branch office, whence it is forwarded to the New York office. Subsequent or renewal premiums are either collected by the agents and forwarded to the branch office in Shreveport or remitted direct by the policy holders to the branch office in Shreveport. In some instances the policy holders make remittance direct to the New York office. The business done by the branch office in Shreveport is only that of a receiving and forwarding office. No policies are written or issued in or from that office, and no applications are passed upon there. None of the premiums collected by the defendant company from persons residing outside of the city of Shreveport were contracted for in the city of Shreveport. The gross amount of premiums collected on business of that class, in 1915, that is, on insurance of persons residing outside of the city of Shreveport, contracted for outside of that city, in localities in which no local license was paid by the defendant, amounted to $280,820.82. The gross amount of premiums collected in 1915 by the branch office in Shreveport on insurance written in that city amounted to $183,179.47. The gross amount of premiums collected by the branch office in Shreveport in 1915 on insurance on persons residing outside of the city of Shreveport, in localities where a local license tax was required of the defendant and paid by it, amounted to $62,063.81. The cities or towns in which a municipal license was demanded and paid on the premiums of $62,063.81, for the year 1916, are Mansfield, Winnfield, De Ridder, Alexandria, Ruston, and Monroe. No municipal license for the year 1916 had been demanded of the defendant company in the cities or towns in which the insurance was written for which the premiums amounting to $280,820.82 were collected, at the time this suit was filed.
[1,2] The learned counsel for the plaintiff concede that the city of Shreveport is not entitled to a license tax on the business done in those cities or towns in which a municipal license was paid, based on the premiums amounting to $62,063.81. Our opinion is that that is an admission that that business was not, in any sense, done in the city of Shreveport. We are also of the opinion that the insurance written in other localities, outside of the city of Shreveport, on which premiums amounting to $280,820.82 were collected, was not contracted for in the city of Shreveport. The fact that the business was not done or contracted for in the city of Shreveport is not affected by the fact that the municipalities in which the business was done have not demanded a local license tax. The ordinance of the city of Shreveport, levying a license tax, seems to contemplate that the tax shall be paid on business done outside of the city of Shreveport and on which no other local license tax is paid. But the ordinance *365 is somewhat inconsistent in that it limits the business on which the city levies the license tax to that “contracted for in this city.” In City of Lake Charles v. Equitable Life Assurance Society, 114 La. 836, 38 South. 578, it was held that the contract of insurance was completed at the place where the policy was delivered and the first premium collected. Hence it was held that the company would not be relieved from liability for a municipal license tax on insurance written in the city of Lake Charles, on proof that the company had paid to the city of New Orleans a license tax on all the business done in the state of Louisiana.
Section 8 of the ordinance of the city of Shreveport, levying the license tax on life insurance companies, is a paraphrase of section 8 of Act No. 171 of 1898, levying the state license tax on life insurance companies, as that statute was originally enacted, the word “city” being substituted in the ordinance where the word “state” appears in the statute. The provision in the statute, basing the license tax on the gross amount of premiums on “the risks located in other states or foreign countries, upon which no license has been paid therein,” was attacked as an attempt to levy a license tax extra-territorially, in City of New Orleans v. Penn Mutual Life Insurance Co., 106 La. 31, 30 South. 254. The question of validity of that provision of the statute was not decided in that case, because all of the business sought to be taxed was done within the state. But the court intimated plainly that the provision for levying the license tax extraterritorially was invalid, and expressed the opinion that no attempt would ever be made to put it into operation extraterritorially. Thereafter the Legislature, observing the futility of attempting to levy the license tax on business done outside of the state, amended section 8 of Act No. 171 of 1898, by re-enacting it, omitting the concluding phrase, viz.:
“And upon risks located in other states or foreign countries, upon which no license has been paid therein.” See Act No. 214 of 1906, p. 371.
The ordinance of the city of Shreveport, levying a license tax on life insurance companies, was apparently adopted to conform to the original enactment of section 8 of Act No. 171 of 1898, and perhaps without regard for the amendment of 1906.
[3] The city of Shreveport has no authority to levy a license tax upon life insurance business done outside of that city, even though no local license tax is paid on the business where it is done.
The judgment appealed from is affirmed, at the cost of the appellant.