CITY OF GRETNA v. ÆTNA LIFE INS. CO.

SAME v. ST. PAUL FIRE & MARINE INS. CO.

No. 37507.

June 26, 1944.

Rehearing Denied Nov. 6, 1944.

Andrew H. Thalheim, of Gretna, for plaintiff and appellant.

Terriberry, Young, Rault & Carroll and Lemle, Moreno & Lemle, all of New Orleans, for defendants and appellees.

ROGERS, Justice.

The City of Gretna filed separate rules against the Aetna Life Insurance Company and the St. Paul Fire & Marine Insurance Company for the recovery of alleged delinquent license taxes for the years 1939, 1940 and 1941, together with interest, costs and penalties. Defendants filed exceptions of no cause of action and, with reservation of the exceptions, answered denying all the allegations of the rules. The suits were consolidated and submitted to the judge of the district court on the pleadings and a stipulation of facts. The judge rendered a judgment in the consolidated cases maintaining the exceptions and dismissing the suits. The City of Gretna has appealed.

The ordinances levying the license tax provide that each and every corporation, firm, association or person doing and conducting a life, accident, burial, fire, or insurance business of any kind in the City of Gretna shall pay a license tax based on the gross amount of annual premiums on all risks located within the city and all risks located outside the city, but contracted for in the city, by companies or agents located there for which a local license is not paid elsewhere. The license is graduated and classified according to the gross amount of the annual premiums.

As the defendant companies admittedly do not maintain offices and are not represented by agents in Gretna, and as their policies covering risks located in that city are issued through their agents in New Orleans, the suits are brought under the provisions of the ordinances which levy license taxes on insurance companies not represented by local agents for risks located in Gretna.

Act 205 of 1924, the general license law, levied an annual license tax for the year 1925 and for each subsequent year on all persons, associations, firms and corporations pursuing any trade, profession or business in this State. Section 9 required every insurance company doing business in the State to file an annual report with the Secretary of State. Section 10 levied a tax on the business of accident and life insurance and section 11 levied a license tax on fire, marine and any other insurance business not otherwise provided for. Section 29 authorized municipal and parochial corporations to levy a license tax to the same extent that a license tax was levied by the State.

Act 7 of 1932 is a special act which was adopted for the purpose of levying license taxes on all persons, associations, firms or corporations engaged in the business of issuing any form of insurance policy or contract. Section 13 expressly repeals sections 9, 10 and 11 of Act 205 of 1924 and also, with the exception of Act 18 of 1924 prescribing the conditions upon which foreign fire insurance companies or associations may engage in the insurance business in this State, all laws or parts of laws in conflict or inconsistent with its provisions.

Sections 1, 2, 3, 4, and 6 of Act 7 of 1932 were amended and re-enacted by Act 20 of 1934. As thus amended, Act 7 of 1932 is the present law on the subject of levying, collecting and enforcing the payment of an

annual license tax for the privilege of engaging in the insurance business in this State.

Act 7 of 1932, as amended by Act 20 of 1934, levies a state license tax for the year 1935 and each subsequent year on insurance companies doing business in this State whether such companies are domiciled in this State or are operating in the State through an agent or other representative. The statute, as amended, further provides that such annual license tax shall be based on the gross amount of annual premiums on all risks located in this State.

The ordinances levying the license tax sought to be recovered in these suits were adopted by the City of Gretna under the authority of Act 7 of 1932, as amended by Act 20 of 1934. Section 5 requires insurance companies doing business in this State, before the first day of March of each year, to render to the Secretary of State a report showing the gross annual premiums on risks located in this State for the preceding year, and containing a statement of the portion of the total gross annual premiums reported which arose on risks actually located within the boundaries of any parish, city, town or village in the State which levies a license tax under the provisions of the act.

Section 11 authorizes any municipality or parochial corporation to levy a license tax on insurance companies which are subject to the payment of a state license tax. The relevant portion of section 11 reads as follows: "That any municipal or parochial corporation in the State shall have the right to impose a license tax on any company, society, association, corporation, or firm or individual, engaged in the business of issuing any form of insurance policy or contract, which may now or hereafter be subject to the payment of any license tax for State purposes, as herein provided, * * *."

The City of Gretna contends that its authority to enact the ordinances levying the license tax which it seeks to enforce in these suits is derived from section 11, as emphasized by section 5 of Act 7 of 1932.

As the defendant insurance companies do not maintain offices and are not represented by agents in Gretna, they deny that they can be made subject to the payment of the license tax levied by the municipality. Defendants contend that Act 7 of 1932, as amended by Act 20 of 1934, empowers municipalities to levy license taxes only on insurance companies engaged in business within the municipal limits, and that since they are neither domiciled nor represented in Gretna, they are not engaged in business in that city regardless of the fact that certain of the risks, which they have assumed, are located there. Defendants argue that the ordinary conception of a company engaged in the insurance business is a company which conducts its business by the issuance of insurance policies for which it receives premiums; that the license tax authorized by the statute is a tax upon the privilege of issuing such policies, and, in the ordinary conception, the location of the subject of the insurance or the place where the hazard might occur is not controlling; that it is the issuance of the policy which is depend-

ent upon the privilege granted by the municipality, and the measure of the tax is the amount of the premium received; that consequently it is the place where the policy is issued and the premium received which determines the municipal authority empowered to levy and collect the tax.

If the defendant insurance companies do not pay any larger amounts than are legally due by them for taxes, they are not concerned as to whom the payments are made, if they are legal. There is no claim or pretense on the part of the defendants that they have paid any license tax to the City of New Orleans, where they contend they are engaged in business, based on the gross amount of annual premiums received from risks located in Gretna. It by no means follows that because their policies covering risks in Gretna are not issued there and because some or all of the premiums received for such risks are not received there, the defendant companies are not engaged in the insurance business in Gretna within the contemplation of Act 7 of 1932, as amended. It can not be disputed that the premiums on which the license tax herein demanded is based were earned in Gretna on risks located in that city and not on premiums earned on risks located elsewhere. And it has been held by no less an authority than that of the Supreme Court of the United States that the collection of premiums by an insurance company constitutes doing business, whether or not the insurance company maintains an agent at the place where premiums become due. Thus in Connecticut Mutual Life Ins. Co. v. Spratley, 172 U.S. 602, 19 S.Ct. 308, 311, 43 L.Ed. 569, the court said: "It cannot be said with truth, as we think, that an insurance company does no business within a state unless it have agents therein who are continuously seeking new risks, and it is continuing to issue new policies upon such risks. Having succeeded in taking risks in the state through a number of years, it cannot be said to cease doing business therein when it ceases to obtain or ask for new risks or to issue new policies, while at the same time its old policies continue in force, and the premiums thereon are continuously paid by the policy holders to an agent residing in another state, and who was once the agent in the state where the policy holders resided. This action on the part of the company constitutes doing business within the state, so far as is necessary, within the meaning of the law upon this subject."

The same doctrine was affirmed in Mutual Reserve Fund Life Ass'n v. Phelps, 190 U.S. 147, 23 S.Ct. 707, 47 L.Ed. 987; Mutual Reserve Life Ins. Co. v. Birch, 200 U.S. 612, 26 S.Ct. 752, 50 L.Ed. 620; Commercial Mutual Accident Co. v. Davis, 213 U.S. 245, 29 S.Ct. 445, 53 L.Ed. 782.

A similar doctrine was in effect upheld by this Court in the case of City of Shreveport v. New York Life Ins. Co., 141 La. 360, 75 So. 80, 81.

By section 16 of Act 171 of 1898, the general license law in effect prior to the adoption of Act 205 of 1924, the municipalities of the State were authorized to levy the same license tax which the State levied. And by section 8 of the act, the state license was levied on all life and accident

insurance companies doing business in the State. In conformity with those statutory provisions, the City of Shreveport adopted an ordinance levying a license tax on every life and accident insurance company conducting its business in the city, the tax being based on the gross amount of annual premiums on all risks located within the city, and on all risks located elsewhere, contracted for in the city or from its office in the city, for which a local license was not paid elsewhere.

In the suit brought by the City of Shreveport against the New York Life Insurance Company to recover a license tax for the year 1916 on the business done by the defendant company through its branch office in Shreveport, it was shown that all applications for life insurance, taken by agents of the company located in the State outside Shreveport, were forwarded to the branch office in that city. The applications were then sent by the Shreveport office to the home office of the company in New York and if accepted, were returned to Shreveport and then delivered to the agents throughout the State, who in turn delivered the policies to the persons insured. The premiums were remitted by the policyholders residing in the State in, as well as outside, Shreveport to the branch office in Shreveport, which remitted them to the home office in New York. Three classes of premiums were involved in the suit to-wit: premiums collected by the branch office from persons residing outside Shreveport in localities in which no local license was paid; premiums collected from persons residing outside Shreveport in localities where a local

license was imposed and paid by the defendant; and premiums collected on insurance written in the city itself.

It was admitted by the attorney representing the City of Shreveport that the city was not entitled to collect the license tax on the business conducted in those cities or towns in which a municipal license was paid, based on the premiums received for the business. After referring to the admission, this Court said: "Our opinion is that that is an admission that that business was not, in any sense, done in the city of Shreveport." In passing on the remaining question involved in the case the Court held that the City of Shreveport was not authorized to levy a license tax on the risks located outside the City of Shreveport, notwithstanding the premiums were remitted by the agents of the company or by the policyholders themselves to the company's office in Shreveport, and regardless of the fact that the municipalities in which the risks were located did not exact the payment of a local license tax.

This holding is expressed by the Court in its opinion in the paragraph preceding the decree as follows: "The city of Shreveport has no authority to levy a license tax upon life insurance business done outside of that city, even though no local license tax is paid on the business where it is done."

In City of Lake Charles v. Equitable Life Assurance Society, 114 La. 836, 38 So. 578, it was held that a separate license may be exacted of a foreign insurance company by every municipality within whose limits it does and conducts an insurance business,

and that such company was not relieved from liability for the license by proof that it had already paid another municipality a license tax based upon the business done by it throughout the State. From which it will appear that under the jurisprudence of the State, founded upon the provisions of the general license law, Act 171 of 1898, which were substantially the same as the provisions of the succeeding license law, Act 205 of 1924, a municipality could not impose a license tax on an insurance company when the tax was based on premiums received by an agent of the company in a particular municipality where the risks covered by the policies were located elsewhere. And if, as shown by the decision of this Court in the suit of the City of Shreveport against the New York Life Insurance Company, the municipality in which the risks are located fails to levy a license tax upon the company and the municipality, in which the company's agent resides and to whom the premiums on such risks are remitted, may not levy a license tax on such premiums, the necessary result is to permit the company to escape the payment of any license tax on the premiums derived from all such risks, notwithstanding they are subject to the payment of a license tax for state purposes.

If defendants' contention that the fact they collect premiums on risks located in Gretna does not constitute doing business in that city since they have no office or representative there should prevail, it is obvious that an insurance company might maintain an office or representative in a particular city of the State and devote its

activities mainly to issuing policies and collecting premiums on risks outside that city without being called upon to pay any municipal or parochial license tax anywhere, although the company would enjoy the police protection and the protection from fire which the outside city or parish furnishes the person or property insured. But defendants' contention can not prevail.

Under the provisions of Section 11 of Act 7 of 1932, every municipal corporation in the State is given the right to impose a license tax on any insurance company engaged in the business of issuing any form of insurance policy or contract which is subject to the payment of the license tax for state purposes. It will be observed that the license tax a municipal corporation is authorized to levy is upon the insurance company itself and not upon its branch office or local representative. If the Legislature had intended that the license tax should be levied only by the municipality in which the office or representative of the insurance company is located, it would not have expressed the grant of power to municipalities to levy such a tax in the broad language appearing in section 11, nor would the Legislature have included in the act the requirement of section 5 that, in rendering its annual report to the Secretary of State showing the gross amount of premiums collected on risks located in the State for the preceding year, every insurance company must include in the report a statement showing the portion of the total gross annual premiums which arose on risks actually located within the boundaries of any parish,

city, town or village of the State which levies a license tax under the provisions of the act.

▉ The provision contained in section 5, which is important to consider in disposing of the question involved in this case, is the provision that the annual report of the insurance company shall set forth the portion of the premiums derived from risks located within the boundary of any of the political subdivisions referred to in the provision. It is said by counsel for defendants, that it may well be that the Legislature, in enacting that portion of Section 5, had some legislative purpose not expressed and not easy of definite ascertainment, but that the indefinite purpose expressed by the requirement can not be construed as granting the City of Gretna the right to impose the license tax herein sought to be enforced. It is admitted, however, by counsel for defendants that from the wording of the statutory provision it would seem that the domicile of the individual is material to the imposition of the tax, but counsel argue that the requirement of section 5, that insurance companies shall furnish the Secretary of State with a statement showing the portion of the annual premiums arising on risks actually located within a municipality or other political subdivision of the State, does not appear in that portion of the statute granting authority to the municipality to impose a license tax, but appears only in that part of the statute creating a mechanism for the measurement of the tax. But the provision was not embraced in section 7 of Act 171 of 1898 and in section 9 of Act 205 of 1924, requiring insurance companies to file with the Secretary of State annual reports showing the amount and character of the business transacted in the State the preceding year. It appears for the first time in section 5 of Act 7 of 1932. If it were not the intention of the Legislature that the provision should bear some relation to the other provisions of the statute, it would not have been embodied therein. It is elementary that effect must be given to all the provisions of a statute if it is possible to do so. It would seem to be clear that the only purpose of the Legislature in requiring in Section 5 that insurance companies in addition to rendering annual reports of the business done by them generally in the State during the preceding year, to report specifically the annual premiums received during the year on risks actually located in a municipality exacting the license tax, was to make effective the right granted to such municipalities by section 11 to impose such a license tax.

▉ If the statutory provisions are to be given their full meaning and effect with regard to municipal and parochial corporations, the location of the risks and the premiums received thereon, and not the domicile of the insurance company or its representative, must determine the taxing authority to which the license tax is due.

The City of Gretna has not introduced a novel method in the system of municipal taxation by levying a license tax based on the gross amount of premiums derived

from insurance risks located within the municipality. Even prior to the adoption of Act 7 of 1932, certain cities and towns of this State levied and collected, apparently without protest from the taxpayers, such license taxes. Some of those towns are mentioned in the opinion of this Court in the case of City of Shreveport v. New York Life Insurance Company, to-wit: Mansfield, Winnfield, DeRidder, Alexandria, Ruston and Monroe. Presumably there are a number of other municipalities which, taking advantage of the express authority conferred by Act 7 of 1932, are levying and collecting license taxes based upon the gross amount of the annual premiums received for insurance risks located within their territorial limits.

For the reasons assigned, the judgment appealed from is annulled, the exception of no cause of action is overruled, and it is further ordered that there be judgment in favor of the City of Gretna and against the defendants, Aetna Life Insurance Company and the St. Paul Fire and Marine Insurance Company for the sum of $111.54 each, and all costs.

ODOM, J., dissents.

PONDER, J., takes no part.

On Application for Rehearing.

PER CURIAM.

The appellees, Aetna Life Insurance Company and St. Paul Fire & Marine Insurance Company, complain in their peti-tions for rehearing that this Court erred in rendering a judgment on the merits, since the appeal was taken from a judgment sus-taining exceptions of no cause of action. The complaints are well founded. Our error in rendering a decree on the merits was induced by the stipulation entered into by the parties regarding the facts. In the original briefs filed on behalf of the appellees, as well as the appellant, it is stated that the case was submitted on a stipulation of facts. This statement is followed by the further statement in the briefs filed on behalf of the insurance companies, "that the facts are undisputed and the sole question for decision is one of law." The appellees say in their petitions for rehearing that the judge of the lower court maintained the exceptions of no cause of action with the legal consequence that the facts never came into consideration and that "when the appeal was taken the only thing required to be incorporated in the transcript for a proper decision of the case was the rule, the exception and the judgment of the lower court on the exception."

In the brief filed on behalf of the City of Gretna opposing the applications for rehearing, it is not disputed that the only issue disposed of by the judge of the district court was the one arising on the exceptions of no cause of action. But counsel for the City of Gretna argues that, "When this Court rendered a judgment on the merits it did the proper thing, the whole matter was before the court, when the case was tried below, the complete rec-

ord was made up and certain admissions were made and agreed to by all counsel." We are unable to accept this view of the case as correct. This Court can not take cognizance of facts upon which the court below has not acted and render a decision on those facts. Code of Practice, Article 895.

In this case the district court having sustained the exceptions of no cause of action and, in effect, having refused to decide the other issues in the case, we can only pass upon the exceptions. In reversing the judgment on the exceptions we can not pass on the merits for the reason that the merits have not been determined in the district court. Our decree will have to be amended accordingly.

We have carefully considered the other grounds of alleged error in our original opinion raised in the petitions for a rehearing and find that they are without merit.

For the foregoing reasons, the judgment which we rendered on the merits of the case is set aside, the exceptions of no cause of action are overruled and the case is remanded to the district court for further proceedings consistent with the views expressed in our original opinion and in this per curiam. The costs of this appeal are to be paid by the defendants and appellees.

With this explanation and amendment of our decree the applications for a rehearing are denied.