22 So.2d 51

CITY OF NEW ORLEANS v. KANSAS
CITY LIFE INS. CO.

No. 36289.

March 26, 1945.

Eugene J. McGivney and Solomon S. Goldman, both of New Orleans, for defendant and appellant.

Francis P. Burns, City Atty., and William Boizelle, Asst. City Atty., both of New Orleans, for City of New Orleans, plaintiff and appellee.

O'NIELL, Chief Justice.

The City of New Orleans is suing the Kansas City Life Insurance Company, of Kansas City, Missouri, for license taxes for the years 1937, 1938, 1939 and 1940, for being engaged in the life insurance business in New Orleans. The defendant, answering the suit, denied that it was ever engaged in the business of issuing life insurance policies in New Orleans. The judge of the Civil District Court decided in favor of the city. The insurance company is appealing from the decision.

The municipal ordinance levying the license tax was adopted under authority of Section 11 of Act 7 of 1932, by which act the State levied on annual license tax on both domestic and foreign insurance companies. The first section of the statute provides:

"That there is hereby levied an annual license tax for the year 1933, and for each subsequent year, on each company * * * engaged in the business of issuing life or accident or health insurance policies, * * * whether such insurance company * * * be domiciled in this State, or operating here through an agent or other representative; such annual license tax to be based on the gross amount of annual premiums on all such risks located in this State, as herein fixed and graded, as follows:" et cetera.

Section 11 of the statute provides:

"That any municipal or parochial corporation in the State shall have the right to impose a license tax on any company, * * * engaged in the business of issuing any form of insurance policy or contract, which may now or hereafter be subject to the payment of any license tax for State purposes, as herein provided, as follows:" et cetera.

Section 13 of the ordinance levying the municipal license tax reads as follows:

"That there is hereby levied an annual license tax for the year 1937 and for each subsequent year on each company, * * * engaged in the business of issuing life, accident or health insurance policies, * * * whether such insurance company * * * be domiciled in this state or operating here through an agent or other representative; such annual license tax is based on the gross amount of annual premiums on all such risks located in this city, as herein fixed and graded as follows:"

Under Section 5 of Act 7 of 1932 every insurance company doing business in Louisiana is required to file in the office of the Secretary of State, on or before the first day of March in each year, a report showing the gross amount of annual premiums received for the preceding year, on risks located in this state, and showing the amount of premiums received "on risks ac-

tually located within the boundaries of any parish, city, town or village in the State which levies a license tax under the provisions of this Act."

With regard to fire and tornado insurance, and other property insurance, the risk is considered located in the municipality in which the property insured is situated; and with regard to life, health or accident insurance, the risk is considered located in the municipality in which the assured resides. The underlying principle in such cases is that the person or property insured has the benefit of the local government and its institutions, such as fire and police protection, and the departments which protect and preserve the health and personal safety of the inhabitants of the municipality. That is why the municipality in which the risk is located is the one to levy a license tax upon the business of issuing insurance policies, no matter where the contract of insurance is made, or where the policy is delivered. City of Shreveport v. New York Life Insurance Co., 141 La. 360, 75 So. 80; City of Gretna v. Aetna Life Insurance Co. (City of Gretna v. St. Paul Fire and Marine Insurance Co.), 206 La. 715, 20 So.2d 1. The decisions in the following cases are to some extent analogous, in that they maintain that an insurance company is considered as doing business in a state—so far as is sufficient to subject the company to the jurisdiction of the courts of the state—in which are located risks on which the company collects premiums, even though the company has no agent or representative residing in the state, and receives the premiums by mail at its office outside of the state, from policyholders residing in the state: Connecticut Mutual Life Ins. Co. v. Spratley, 172 U.S. 602, 19 S.Ct. 308, 43 L.Ed. 569; Mutual Reserve Fund Life Ass'n v. Phelps, 190 U.S. 147, 23 S.Ct. 707, 47 L.Ed. 987; Mutual Reserve Life Ins. Co. v. Birch, 200 U.S. 612, 26 S.Ct. 752, 50 L.Ed. 620; Commercial Mutual Accident Co. v. Davis, 213 U.S. 245, 29 S.Ct. 445, 53 L. Ed. 782.

The Kansas City Life Insurance Company has never had a resident agent soliciting insurance in New Orleans. It is because the company collected premiums from policyholders residing in New Orleans during the years 1937, 1938, 1939 and 1940 that the city claims that the insurance company did business in the city during those four years. The city contends that the insurance company, by receiving from policyholders residing in New Orleans premiums mailed to the company's home office in Kansas City, during the four years in question, was engaged in the business of issuing life insurance policies in New Orleans, and that, as the company was then subject to the payment of the license tax levied by the State, the municipality had authority, under Section 11 of Act 7 of 1932, to levy a license tax on the business done in New Orleans, similar to the license tax levied by the State.

The insurance company denies that it ever issued a policy of insurance on the life of a person residing in New Orleans at the time of the issuing of the policy. The company contends that the premiums which were collected for insurance on the lives of residents of New Orleans during the years 1937, 1938, 1939 and 1940 were in the

nature of renewal premiums on the policies that were issued while the risks were residing elsewhere, and that the policyholders, in such cases, after receiving their policies, moved to and became residents of New Orleans. The company pleads that it would be violative of the due process clause in the 14th Amendment of the Constitution of the United States, and the 2nd section of Article I of the Constitution of Louisiana, to subject the company to a municipal license tax for collecting premiums on policies of insurance on the lives of residents of New Orleans on policies that were issued when the persons insured resided elsewhere, because the company has no control over a policyholder's right to change his place of residence, and is not at liberty to violate a contract of insurance by refusing to receive a premium mailed by a policyholder to the home office of the company.

In support of this plea the insurance company took the depositions of the assistant controller and of the secretary of the company, before a notary public in Kansas City, Missouri. The two witnesses testified—and the fact is admitted—that the Kansas City Life Insurance Company has never had an office or a resident agent in New Orleans to solicit business or to collect premiums for the company. The assistant controller, as the request of the attorney propounding the interrogatories for the insurance company, gave a list of the premiums received at the home office in Kansas City from policyholders residing in New Orleans in the years 1936, 1937, 1938 and 1939. The reason why the witness gave the number and amount of premiums received in 1936 and

did not give the number or amount of premiums received in 1940 is that the license tax is based upon the estimated amount of the premiums to be collected during the year, and the estimate is the amount of premiums collected during the next preceding year. This list of the premiums received from policyholders residing in New Orleans shows the number and date and the amount of each policy, the name of the insured, the place where the application for the insurance was made, the name and place of residence of the agent who obtained the application, and place of residence of each applicant at the time of making his application, et cetera.

The witness, in response to a request of the attorney who propounded the cross-interrogatories for the city, furnished also a list of the names of the agents who represented the company in Louisiana in the years 1936, 1937, 1938, 1939 and 1940. This list shows that the company had in Louisiana an average of 22 agents in the five years, and that none of the agents resided in New Orleans.

The list or detailed statement furnished by the assistant controller, at the request of the attorney propounding the interrogatories for the insurance company, discloses that during the years 1936, 1937, 1938 and 1939 a total of 306 premiums were remitted by mail to the home office of the company in Kansas City, by 95 policyholders residing in New Orleans; and that, of this number of premiums, 67, amounting to $5,898.21, were remitted in 1936, 73 amounting to $7,702.50, were remitted in 1937, 81, amounting to $6,375.10, were remitted in

1938, and 85, amounting to $6,797.80, were remitted in 1939. Nineteen of the 95 policyholders residing in New Orleans, who remitted premiums by mail to the home office in Kansas City during the years 1936, 1937, 1938 and 1939, were residents of the City of New Orleans at the time when they made their applications for insurance and when the policies were actually delivered to them. And the list or statement shows that 4 of the 19 policies which were issued to persons residing in New Orleans at the time when they applied for and received their policies of insurance were issued in the years 1936, 1937, 1938 and 1939—one of such policies being issued in each of the four years, 1936, 1937, 1938 and 1939. The list or detailed statement does not disclose whether any policy was issued in the year 1940, to an applicant residing in New Orleans at the time when the company received his application and issued the policy; but the list or detailed statement shows that the issuing of the 19 policies on the lives of persons residing in New Orleans at the time when the policies were applied for and issued extended over a period of 15 years, commencing in 1924; and the list or statement shows also that the applications for the policies, when received by the company at its home office in Kansas City, showed on their face that the applicants were then residents of New Orleans. It is not contended by either of the witnesses for the insurance company that the company ever turned down an application for insurance on the life of a person residing in New Orleans at the time of making his application. From this information we infer that the company con-tinued through the year 1940 the writing of insurance on the lives of applicants residing in the City of New Orleans.

The facts of this case, therefore, as disclosed by the evidence offered by the insurance company itself, make it unnecessary for the court to decide whether it would be a denial of due process of law to compel the company to pay a license tax for merely collecting premiums from policyholders residing in New Orleans, whose policies were applied for and issued before they became residents of New Orleans. The fact that the company actually issued policies to applicants residing in New Orleans—within the knowledge of the company—at the time when the applications were made and the policies were issued subjected the company to the license tax levied by the City of New Orleans. Nor is it a denial of due process of law to measure the license tax by the total amount of premiums collected by the insurance company from policyholders residing in New Orleans, regardless of the place where they resided at the time when they applied for and received their policies. If the insurance company, when it received the first application from a resident of New Orleans in any given year, doubted that the company would do enough business in New Orleans in that year to justify paying the minimum license tax, the company should have declined to accept the application, in order to preserve the right to make the plea which the company now urges, that the mere collection of premiums on policyholders residing in New Orleans is not doing an insurance business in New Orleans if the policyholders resided elsewhere at

the time when they applied for and received their policies. Whether that plea would be well founded in such a case is a matter which, as we have said, need not be decided in this case. The important point is that there is no constitutional inhibition against a municipality's measuring or grading its license tax on an insurance business according to the total amount of premiums collected on risks located in the municipality during the year in which an insurance company actually does any insurance business in the municipality.

In the case of Equitable Life Assurance Society v. Pennsylvania, 238 U.S. 143, 35 S.Ct. 829, 59 L.Ed. 1239, it was held that a statute of Pennsylvania, levying an annual license tax on the privilege of doing a life insurance business within the state, and measuring or grading the tax according to the amount of premiums collected by the company from policyholders residing in the state, did not violate the due process clause in the 14th Amendment of the Constitution of the United States by including in the amount of premiums those mailed by residents of Pennsylvania to the home office of the insurance company in New York. The holding is stated in the syllabus of the opinion thus:

"The annual 2 per cent privilege tax imposed by Pa. act of June 28, 1895 (P.L. 408 [72 P.S. § 2262]), upon the gross premiums received by a foreign life insurance company from the business done within the state, may be levied upon premiums paid to the company outside the state by residents of Pennsylvania, without rendering the tax invalid as taking property without due process of law."

In the course of the opinion rendered in the case Mr. Justice Holmes, for the court, stated:

"We are dealing with a corporation that has subjected itself to the jurisdiction of the state; there is no question that the state has a right to tax it, and the only doubt is whether it may take this item into account in fixing the figure of the tax. Obviously the limit in that regard is a different matter from the inquiry whether the residence of a policy holder would of itself give jurisdiction over the company. The argument of the state court is that the company is protecting its insured in Pennsylvania equally whether they pay their premiums to the company's agent in Philadelphia or by mail or in person to another in New York.

"These are policies of life insurance, and, according to the statement of the plaintiff in error, are kept alive and renewed to residents of Pennsylvania by payments from year to year. The fact that the state could not prevent the contracts, so far as that may be true, has little bearing upon its right to consider the benefit thus annually extended into Pennsylvania in measuring the value of the privileges that it does grant. We may add that the state profits the company equally by protecting the lives insured, wherever the premiums are paid. The tax is a tax upon a privilege actually used. The only question concerns the mode of measuring the tax. Flint v. Stone Tracy Co., 220 U.S. 107, 162, 163, 31 S.Ct. 342, 55 L.Ed. 389, 417, 418, Ann.Cas. 1912B, 1312. As to that a certain latitude must be allowed. It is obvious that

many incidents of the contract are likely to be attended to in Pennsylvania, such as payment of dividends when received in cash, sending an adjuster into the state in case of dispute, or making proof of death. See Connecticut Mut. L. Ins. Co. v. Spratley, 172 U.S. 602, 611, 19 S.Ct. 308, 43 L.Ed. 569, 572; Pennsylvania Lumbermen's Mut. F. Ins. Co. v. Meyer, 197 U.S. 407, 415, 25 S.Ct. 483, 49 L.Ed. 810, 814. It is not unnatural to take the policy holders residing in the state as a measure without going into nicer, if not impracticable, details. Taxation has to be determined by general principles, and it seems to us impossible to say that the rule adopted in Pennsylvania goes beyond what the Constitution allows."

In Compania General de Tabacos v. Collector of Internal Revenue, 275 U.S. 87, 48 S.Ct. 100, 72 L.Ed. 177, it was held that the government of the Philippine Islands might impose a license tax upon insurance premiums paid by a tobacco company doing business there to a London insurance company licensed to do business in the Philippine Islands, for insurance upon property located in the Philippine Islands, notwithstanding the contract for the insurance was made outside of the Philippine Islands. The court declared that its ruling was based upon the decision in Equitable Life Assurance Society v. Pennsylvania, 238 U.S. 143, 35 S.Ct. 829, 59 L.Ed. 1239.

Our conclusion is that the judgment appealed from is correct.

The judgment is affirmed.