164 So.2d 397 (1964)
Dr. Walter S. HARMON, Plaintiff-Appellee,
v.
LUMBERMENS MUTUAL INSURANCE COMPANY, Defendant-Appellant.
No. 10174.
Court of Appeal of Louisiana, Second Circuit.
April 30, 1964.
Rehearing Denied May 28, 1964.
Writ Granted July 1, 1964.
*398 Bodenheimer, Looney & Jones, Shreveport, for appellant.
Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
BOLIN, Judge.
Shreveport surgeon Dr. Walter S. Harmon instituted action under a policy of insurance issued by Lumbermens Mutual Casualty Company seeking recovery of indemnity for injuries to plaintiff's hand, inflicted by the accidental discharge of his gun. From judgment awarding plaintiff $50,000, but rejecting his request for penalties and attorney's fees, defendant appeals and plaintiff answers, asking for an increase of $50,000 as penalties and $20,000 attorney's fees.
Little or no controversy surrounds the factual aspects of this case. In October 1960, while on a hunting trip, Dr. Harmon climbed through a fence and dropped his gun catching it by the barrel at which time it discharged. Three fingers of his left hand were mangled and were subsequently amputated through the proximal phalanges below the metacarpal phalangeal joint. Stiffness in the index finger likewise resulted from the injury. It is admitted by all the testifying experts that Dr. Harmon is incapacitated by this injury from performing surgery of any consequence. He has had minor surgery on his left index finger to fix the distal joint in a flexed position to facilitate picking up objects with a thumb and finger grasp. At the time of the above occurrence, Dr. Harmon was employed as administrator of Confederate Memorial Hospital.
Proof of loss was submitted to defendant on November 20, 1960, within the period designated in the policy. It was not until six months later that defendant, by letter dated May 12, 1961, denied liability. Plaintiff then engaged counsel who wrote asking defendant to specify the basis for denying plaintiff's claim. The latter responded, admitting Dr. Harmon had obviously sustained a severe injury to his hand, but stated "the information we have in file indicates the policy requirements *399 for loss of use of the hand have not been met."
On June 5, 1961, this suit was filed. Defendant answered contending plaintiff had not suffered loss of use of his left hand; and further that no coverage was afforded plaintiff for the reason he allegedly was already incapacitated from performing surgery by previous heart trouble. Therefore, it is contended he was not, directly and independently of all other causes, rendered disabled by the accident under the following provisions of the policy:
"B Accidental Loss of Use of Hand.
"When injury to either or both hands caused solely by an accident occurring while the Policy is in force as to the Insured shall, directly and independently of all other causes, result within twenty days after the date of the accident in the complete loss of use of either or both hands and prevent the Insured from performing any and all duties of his profession for a period of twelve consecutive months, such injury shall then be considered as resulting in the permanent loss of use of either or both hands and the Company will pay Fifty Percent of the Specific Loss Accident Indemnity stated in the Schedule." (Emphasis added.)
Plaintiff, throughout the trial in the lower court and on appeal to this court, has primarily contended that the prior health of Dr. Harmon was immaterial and that such evidence was inadmissible. All evidence relative to Dr. Harmon's heart condition was admitted subject to this objection. Defendant, on the other hand, contends the policy provisions require taking into account the prior physical condition of plaintiff. The lower court adopted defendant's version of the meaning of the policy but after admitting testimony of several doctors, subject to the objections, found Dr. Harmon was able to perform surgery prior to the accident and consequently, being totally incapacitated by the loss of use of his hand, was entitled to recover under the policy. The trial court awarded plaintiff the maximum allowed under the policy for loss of use of one hand but denied penalties and attorney's fees on the ground that defendant's failure to pay benefits under the policy was neither arbitrary nor capricious.
We disagree with the lower court's conclusions as to the interpretation of the policy provision. We are of the opinion that the contested provision is clear and unambiguous; and that plaintiff's view of its meaning is correct.
So far as we can determine after closely reviewing the record and briefs, there is no serious contention that the gunshot wound was not the "direct and independent" cause of the loss of use of plaintiff's hand. The dispute centers around whether the loss of use of the hand must be the "direct and independent cause" preventing Dr. Harmon from practicing his profession as a surgeon. Our view is that the clause "Accidental Loss of Use of Hand" plainly sets forth the coverage intended under the quoted provision of the policy; that such loss of use must be directly and independently caused by the accident; and that the second portion of the provision applies to a determination of the permanence of the injury. Certainly the loss of use of his hand is conceded by all to be an injury such as would prevent the policyholder from practicing surgery for a period of twelve consecutive months. Therefore, under the policy such injury shall then be considered as resulting in the permanent loss of use of either or both hands for which the company states it will pay fifty percent of the Specific Loss Accident Indemnity stated in the schedule, which is conceded to be the sum of $50,000.
It seems pertinent to point out this type of policy was available only to Fellows in the American College of Surgeons, of which Dr. Harmon was an active member at the *400 time of the issuance of the group policy and of his certificate of insurance. It is further appropriate to call attention to a letter written by Charles O. Finley & Co., Professional Group Disability Underwriters, to holders of certificates of insurance under the group policy issued to the American College of Surgeons, which letter, omitting the salutation, recites as follows:
"We are most happy to inform you that the Lumbermens Mutual Casualty Company has agreed to provide ADDITIONAL BENEFITS AT NO INCREASE IN PREMIUM on your above policy effective August 1, 1958.
"Many Fellows have written to us stating that they thought the American College of Surgeons had made available a very attractive policy. However, they did not think the policy would be complete protection until coverage was made available for loss of thumb, fingers, and more especially, loss of use of hand. Several Fellows gave the example of a crushed hand, preventing them from performing surgery and not receiving any benefits whatsoever, because the hand was not severed."
This letter accompanied the rider which was to be attached to the certificate and became effective on the same date. Our perusal of the certificate reveals no requirement that the individual surgeon be actively engaged in the practice of surgery on the date of the accident. On the contrary, the policy in Part V provides for "Individual Terminations" in the following language:
"The insurance of any Insured shall immediately terminate; (a) on the date the Group Policy issued to the American College of Surgeons is terminated; (b) on the date the Insured retires or voluntarily ceases to be actively engaged on a full time basis in the duties of his profession; (c) on the date the Insured ceases to be a member of the Holder; (d) on the premium due date following the Insured's seventieth birthday; (e) on the expiration of the period of grace if the Insured fails to make the required premium payment; (f) on the premium due date following the Insured's sixtieth birthday if the aggregate indemnities under this Policy and any other `Specific Loss Indemnity Group Insurance Policy' issued by the Company exceeds $100,000, or (g) on his becoming a full time member of the armed services of any country and the Company will refund premium prorata upon request for any period for which coverage is not afforded by reason of this provision. Termination of the insurance of an Insured shall be without prejudice to any claim of such Insured originating prior thereto."
The policy under consideration had been in force and effect for more than two years prior to the accident; none of the stipulations relative to termination had occurred prior to the accident; the policy was prepared by the insurance company and presumably a premium commensurate with the type risk involved herein was charged and paid; consequently, we are of the opinion the insurance company is charged with knowledge of its own policy and the legal meaning of its provisions.
We come next to the serious question of the applicability of the penalty provisions of LSA-R.S. 22:657 which stipulates:
"§ 657. Payments of claims; health and accident policies; penalties
"A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least *401 every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases.
"B. All claims for accidental death arising under the terms of health and accident contracts where such contracts insure against accidental death shall be settled by the insurer within sixty days of receipt of due proof of death and should the insurer fail to do so without just cause, then the amount due shall bear interest at the rate of six percent per annum from date of receipt of due proof of death by the insurer until paid." As amended Acts 1960, No. 287, § 1.
In the court below defendant relied upon the case of Boseman v. Connecticut General Life Insurance Company, 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1936) as authority for its contention that the matters under discussion are controlled by the law of Illinois, rather than the law of Louisiana. That case held a policy of group insurance is governed by the law of the place of the issuance and delivery of the policy where the policy expressly provided for such. There is no evidence in the instant case that the master policy provided the law of the place of issuance should govern the interpretation or construction of the policy. In the absence of any proof to the contrary it must be assumed there is no such provision in it.
In Thieme v. Union Labor Life Insurance Company, 12 Ill.App.2d 110, 138 N.E. 2d 857 (1956) the Illinois court held that where the master policy differed in several respects from the certificate issued to the individual policyholder the certificate became an integral part of the policy. Delivery by defendant of this certificate to the policyholder in Illinois therefore was held to require the application of the Illinois law to the interpretation where no provision for the applicable law was incorporated in the policy. Authority supporting this position is found in 29 American Jurisprudence, Insurance, Sec. 38; Appleman's Insurance Law and Practice, Vol. 3, Sec. 1601; 46 C.J.S. Insurance § 1407.
We think LSA-Civil Code Article 10, together with the decisions rendered thereunder, is ample authority for application of the law of Louisiana to the present case, particularly in regard to the penalty provisions of LSA-R.S. 22:657. LSA-Civil Code Article 10 provides:
"The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed.
"But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect." (Emphasis added.)
Certainly, when an insurance company issues a life, health and accident policy to a resident of Louisiana there engaged in the practice of surgery the contract must be intended to have effect in Louisiana. In City of Shreveport v. New York Life Ins. Co., 141 La. 360, 75 So. 80 (1917) it was held, on the authority of City of Lake Charles v. Equitable Life Assurance Society, 114 La. 836, 38 So. 578 (1905) that a contract of insurance is completed at the place where the policy is delivered and the first premium collected. This holding has been followed in numerous Louisiana and Federal decisions and has come to be the *402 accepted rule with regard to insurance contracts.
The evidence does not establish where the individual certificate was delivered to Dr. Harmon although it is conceded the master policy issued to the American College of Surgeons was entered into in Illinois. The certificate and rider were received by plaintiff at his office and he testified he made all annual payments by check from Shreveport. As stated by the Supreme Court in General Talking Pictures Corp. v. Pine Tree Amusement Co., Inc., et al., 180 La. 529, 156 So. 812 (1934) "The contract was to have effect in Louisiana and therefore must be construed under and governed by the laws of this state." See also American Slicing Machine Co. v. Rothschild & Lyons, et al. (2 Cir., 1929) 12 La.App. 287, 125 So. 499; Finance Security Co., Inc. v. Mexic (La. App. Orleans 1939) 188 So. 657; Universal C. I. T. Credit Corporation v. Hulett (La. App. 3 Cir., 1963) 151 So.2d 705 at 707.
In the light of our determination that there is no ambiguity in the policy defendant cannot be said to have acted reasonably and prudently in refusing to pay claimant under the provisions of its own policy which refusal clearly entitles plaintiff to benefits under the penalty statute. The statute provides in addition to the penalty of double the amount of the contract that the court shall determine an award of reasonable attorney's fees. While no evidence has been introduced relative to the amount of attorney's fees, we have before us the record and in view of all the circumstances and the amount of the judgment, we are of the opinion that a fee of $20,000, as requested by plaintiff, would be a reasonable award for such services.
For the reasons enunciated herein the judgment of the lower court is affirmed insofar as it awards plaintiff $50,000 for loss of use of his hand, but is amended to additionally award plaintiff $70,000 as penalties and attorney's fees, or a total of $120,000, together with five (5%) per cent per annum interest from date of judicial demand until paid. Defendant is cast with all costs.
Amended.