Dear Mr. Partney:
This office is in receipt of your request for an opinion of the Attorney General. You ask whether the Town of Forest Hill may collect an insurance license tax from an insurance company that has no agents or office in the town but collects renewal premiums by mail from certain residents who obtained insurance prior to moving into the town.
This office previously rendered an opinion on a similar question, Atty. Gen. Op. 1972-74, p. 251. Jefferson Standard Life Insurance Company refused to pay to the Village of Addis their occupational license tax that was based on premiums received by the company from Addis residents. The Company did not have a local office or agents soliciting business in Addis. This office concluded that the Village of Addis could impose a license tax on Jefferson Standard Life Insurance Company. Reliance was placed upon City of New Orleans v. Kansas City Life Ins. Co., 207 La. 745, 22 So.2d 51 (1945), City of Gretna v. Aetna Life Ins. Co., 200 La. 710, 20 So.2d 1, (1944), and R.S. 20:1076.
R.S. 22:1076 was specifically found to authorize municipalities to impose a license tax on any insurer engaged in the business of issuing any form of insurance policy or contract which is subject to the payment of any license tax for state purposes, whether the company is operating in this State through an agent or other representative or otherwise.
However, we find the City of New Orleans and City of Gretna cases, supra, are distinguishable from the facts in question since it appears in those cases some policies were applied for and issued to applicants while residing in the City, and the company in question maintains it has not sold insurance to anyone while living in the town. In the City of New Orleans case, supra, the court declared it did not decide the issue if the company could be compelled to pay a license tax for merely collecting premiums from policy holders residing in the city for policies applied for and issued before they became residents.
In the City of New Orleans case, supra, the court did state that there were no constitutional inhibitions against a municipality's measuring its license tax on the total amount of premiums collected "on risks located in the municipality during the year in which an insurance company actually does any insurance business in the municipality." And in the City of Gretna case, supra, the location of the risks and premiums received thereon was considered as determinative for the taxing authority rather than the domicile of the insurance company or its representative.
Having found these case distinguishable, we do not find Louisiana jurisprudence with the exact factual situation as presented herein. We believe that location of the risk should be significant in determining if the insurance company is doing business in a municipality by collection of the premiums, since as noted in the City of Gretna case, supra, to conclude otherwise would mean the company would pay no license tax although it would enjoy the police and fire protections furnished the person or property insured. And, in the City of New Orleans case, supra, it was observed that it is obvious that many incidents of the contract are likely to be attended at the location of the risk such as payment of dividends when received in cash, sending an adjuster in a case dispute or making proof of death.
However, we are bound by the expression of the United States Supreme Court in Provident Sav. L. Assur. Soc. v. Kentucky,239 U.S. 103 (1915) which appears factually similar. Therein the insurance company withdrew all of its agents from Kentucky, closed all its offices, ceased to solicit or write insurance, or maintain any agent to collect any premiums within the jurisdiction. All premiums for policies previously issued were paid to the home office in New York through mail, with the court noting that it was not controverted that the company was not soliciting insurance or collecting monies in the state. The court found the question posed was the power of the state to treat the mere continuance of the obligation of the existing policies held by resident policy holders "as the transaction of a local business" so as to justify the imposition of an annual privilege tax. The United States Supreme Court held, "We cannot conclude that the state has this power."
We are constrained to reach the same conclusion in the instant situation based upon this decision, and find the town cannot impose a license tax on an out of state insurance company who has no office or agent to write a policy or collect any premiums in the town and has not written a policy for an individual while residing in the town.
The recent case of Quill Corp. v. North Dakota by the United States Supreme Court on May 26, 1992 may indicate a change in view wherein the court considered the validity of a use tax against Quill, an out-of-state mail order house with neither outlets nor sales representative in the State. The Court made a distinction between the Due Process Clause and Commerce Clause, and found the Due Process Clause did not bar enforcement of the State's use tax against Quill, pointing out Due Process jurisprudence has evolved substantially. However, in the Quill case the court found that the company had purposely directed its activities at North Dakota residents although not physically present, and the magnitude of those contacts were found more than sufficient for due process.
While there may be indication of changes, and the Supreme Court decision in the Provident Sav. L. Assur. Soc. case was from 1915, we do not find that it has been overruled. Accordingly, we base our conclusion on that case in holding the Company cannot be required to pay the occupational tax. To question this conclusion your recourse would be legal proceedings.
We hope this sufficiently answers your question, but if we can be of further assistance, please do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 BY: BARBARA B. RUTLEDGE Assistant Attorney General
BBR/2074f